456 So.2d 916 (1984)
Nelson B. JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. AV-219.
District Court of Appeal of Florida, First District.
August 8, 1984.
Rehearing Denied October 2, 1984.
*917 Michael J. Minerva, Asst. Public Defender, Tallahassee, for appellant.
Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Nelson B. Jackson appeals his conviction of vehicular homicide in violation of section 782.071, Florida Statutes (1982 Supp.).[1] He questions the admissibility of the results of a blood test and complains of the failure to give his requested instruction on the definition of reckless driving. We affirm.
Appellant and codefendant Jerry Miller were charged in three counts with manslaughter by driving while intoxicated, manslaughter by culpable negligence, and vehicular homicide. Construed most favorably to the state, the evidence at trial showed that on November 2, 1982, appellant, after having consumed at least two beers and while consuming another, was driving approximately 65 to 70 miles per hour in a 45 mile per hour zone in an apparent race with codefendant Miller, who was also driving at a high rate of speed. Both vehicles were weaving and dodging in and out of traffic, passing each other back and forth, and coming very close to and tailing other cars. As they approached the intersection of Highway 301 and Market Road on the outskirts of the city of Starke, appellant's vehicle collided with a car that was crossing the road, killing the driver of that car.
Trooper Donald Roberts of the Florida Highway Patrol saw appellant at the emergency room of the Bradford County Hospital and smelled alcohol on his breath. At that time Trooper Roberts, based on his own investigation and on information obtained from a fellow officer, knew that the accident had occurred under the circumstances stated above and that as a result a person had been killed. Based on this information about the accident and the smell of alcohol on appellant's breath, Roberts ordered a blood sample taken from appellant for testing.[2] Trooper Roberts testified that he had no opinion regarding whether appellant's normal faculties were impaired at the time of the accident or when the blood sample was ordered. The results of the blood test showed .17 percent by weight of alcohol in appellant's blood.[3]
Appellant was tried by a jury and convicted of the count for vehicular homicide. He raises two issues on appeal:
1. Whether the trial court erred in admitting the blood test results because (a) the officer who directed that the blood sample be taken lacked probable cause to believe that appellant's normal faculties *918 were impaired by alcohol; (b) section 316.1933(1), Florida Statutes (1982 Supp.), violates the constitutional prohibition against unreasonable seizures since it fails to provide the degree of intoxication required before probable cause will be deemed to exist; and (c) the blood test was administered in violation of statutory and regulatory procedures.
2. Whether the trial court erred in rejecting appellant's requested jury instruction defining the "recklessness" element in the vehicular homicide statute as "driving with willful or wanton disregard for the safety of other persons," which is the statutory definition of the separate offense of reckless driving in section 316.192, Florida Statutes (1982 Supp.).
Regarding the first issue, section 316.1933(1), Florida Statutes (1982 Supp.), states in pertinent part:
[I]f a law enforcement officer has probable cause to believe that a motor vehicle driven by ... a person under the influence of alcoholic beverages ... has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood. .. .
Appellant argues that the phrase, "under the influence of alcoholic beverages," is the same as "intoxicated" and contends that the key to determining whether someone is intoxicated is whether their "normal faculties are impaired," citing State v. Harris, 348 So.2d 283 (Fla. 1977). Because Trooper Roberts, the officer who ordered the blood test, testified that he had no opinion on whether appellant's normal faculties were impaired, appellant argues that there was no probable cause to justify the ordering of a blood test. We disagree.
The phrase "under the influence of alcoholic beverages" is not equivalent to the term "intoxicated." As explained in Harris, although an intoxicated person is necessarily under the influence of alcoholic beverages, a person does not have to be intoxicated or have his normal faculties impaired in order to be "under the influence of alcoholic beverages." Probable cause exists under section 316.1933(1) to order a blood test if the officer, based upon reasonably trustworthy information, has knowledge of facts and circumstances sufficient to cause a person of reasonable caution to believe that the suspect driver was under the influence of alcoholic beverages at the time of the accident and caused the death or serious bodily injury of a human being. See, Behr v. State, 376 So.2d 398 (Fla. 1st DCA 1979). Although probable cause must be based on objective facts and circumstances, not on personal opinions or suspicions, see, Brown v. State, 330 So.2d 861 (Fla. 4th DCA 1976), the state has met its burden in this case by showing that Trooper Roberts smelled alcohol on appellant's breath, knew the circumstances causing the accident, and knew that appellant was the driver of the motor vehicle which caused a death.
We likewise find no merit in appellant's argument that section 316.1933(1) is unconstitutional under the fourth and fourteenth amendments to the United States Constitution because it permits seizure of a person's blood without probable cause to believe that such person's normal faculties were impaired at the time of the accident. Appellant argues that since section 316.193, Florida Statutes (1982 Supp.), defining the offense of driving while under the influence of alcoholic beverages, requires that a person be under the influence to the extent that normal faculties are impaired before he can be guilty of the offense, section 316.1933, to be constitutionally acceptable, should contain the same standard for determining when a blood test can be taken. Stated another way, appellant contends that since no statutory offense is committed unless the driver's normal faculties are actually impaired due to his consumption of alcohol, probable cause that a criminal offense has been committed requires a showing of actual impairment. Appellant relies on Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); State v. Bender, 382 So.2d 697 (Fla. 1980); *919 Drury v. Harding, 443 So.2d 360 (Fla.1st DCA 1983); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
Appellant does not specifically state whether he contends the statute to be facially insufficient or unconstitutional as applied in this case. In either event, however, the cited cases do not persuasively support appellant's argument because they are factually dissimilar and do not deal specifically with the question here presented. They do, however, support the proposition that the facts relied on by the officer must show probable cause to believe a criminal offense has been committed.
The purpose of the blood test taken under section 316.1933(1) is to aid in determining whether the driver causing a serious automobile accident, when reasonably believed to be under the influence of alcoholic beverages, had his normal faculties impaired by alcohol. The statutory provision contains sufficient requirements to establish probable cause to believe a criminal offense has been committed because, in addition to the required showing that the driver is "under the influence," the statute also requires that the driver "has caused the death or serious bodily injury of a human being." As previously discussed, these elements were present when appellant's blood test was ordered by Trooper Roberts. We hold that the statute is neither unconstitutional on its face nor as applied in this case.
Appellant also argues that the blood test was inadmissible because it was not conducted strictly in accordance with the procedures required by statute and regulations. We disagree, but find it necessary to discuss only one ground argued by appellant, i.e., that the blood test was inadmissible because the state failed to show that the individual who analyzed the blood specimen, Mr. Peter Lardizabel, held the statutorily required permit from the Department of Health and Rehabilitative Services. § 316.1933(2)(b), Fla. Stat. (1982 Supp.). After the state had qualified Mr. Lardizabel as an expert and had offered the blood test results into evidence, counsel for appellant made a general objection to the admissibility of the blood test results because "the proper predicate" had not been laid by the state. But appellant's counsel did not at any time state the specific objection that Mr. Lardizabel was not properly licensed as required by the statute. The general objection by appellant's counsel was not sufficient to put the court and the state on notice that appellant questioned whether the witness held such a permit, especially in view of the witness's qualification testimony that he had testified numerous times on this subject in Florida courts. If appellant had raised this specific objection when the witness was tendered as an expert witness or when the test results were offered into evidence, it could have been disposed of quite simply by putting one more question to the witness. An appellate court will not consider grounds of objection to the admissibility of evidence unless they have been stated with specificity in the trial court. Tabasky v. Dreyfuss, 350 So.2d 520 (Fla.3d DCA 1977). Counsel's failure to make a specific objection based on the lack of an HRS permit amounts to a waiver of that objection for appellate review.
Finally, appellant contends that the trial court erred in refusing to give his requested jury instruction which defined driving in a "reckless manner," as that term is used in the vehicular homicide statute to mean "willful or wanton disregard for the safety of other persons." Appellant argues that he was entitled to this instruction because the essential element of the offense of vehicular homicide is reckless driving and the offense of reckless driving is defined by statute as driving with "willful or wanton disregard for the safety of persons or property." § 316.192, Fla. Stat. (1982 Supp.); McCreary v. State, 371 So.2d 1024 (Fla. 1979). The trial court gave, without objection, the following instruction from the Standard Jury Instructions in Criminal Cases:

*920 Before you can find the defendants guilty of Vehicular Homicide as charged in Count III, the State must prove more than a failure to use ordinary care, and must prove the following three elements beyond a reasonable doubt:
1. ATILLA TOTH is dead;
2. The death was caused by the operation of a motor vehicle by NELSON B. JACKSON, JR. and/or JERRY B. MILLER.
3. NELSON B. JACKSON, JR. and/or JERRY B. MILLER operated their motor vehicles in a reckless manner likely to cause the death of or great bodily harm to another person.
An intent by the defendants to harm or injure the victim or any other person is not an element to be proved by the State.
The instruction given defined the offense of vehicular homicide sufficiently to inform the jury that the offense requires more than ordinary lack of care, but something less than culpable negligence. McCreary v. State, supra. In our view, there is no significant difference in meaning between driving a vehicle "in willful or wanton disregard for the safety of other persons" and driving it "in a reckless manner likely to cause the death of or great bodily harm to another person." Indeed, it might even be argued that the instruction actually given suggests a more stringent burden of proof on the state than the requested instruction that was denied. Accordingly, the trial court did not err in refusing to give appellant's requested instruction.
The judgment of conviction is AFFIRMED.
SHIVERS and THOMPSON, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
Appellant's motion for rehearing is DENIED. Appellant's alternative motion to withhold the mandate pending the Florida Supreme Court's decision in Drury v. Harding, 443 So.2d 360 (Fla. 1st DCA 1983), rev. granted, S.Ct. Case No. 64,727 is DENIED. Drury relates solely to the use of blood test results in the absence of duly adopted HRS rules for testing blood alcohol content as required by section 316.1932, Florida Statutes (Supp. 1982). Appellant's argument that Drury is applicable to the present case is founded upon the assumption that the blood sample herein was taken under section 316.1932. As discussed in our opinion, the blood sample was properly taken pursuant to the authority of section 316.1933, Florida Statutes (Supp. 1982), and not pursuant to section 316.1932. Accordingly, we find Drury inapplicable to this case.
SHIVERS, THOMPSON and ZEHMER, JJ., concur.
NOTES
[1] The statutes provide:

"Vehicular homicide" is the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another. Vehicular homicide is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] Appellant signed a consent form after he was informed by Trooper Roberts that a blood sample would be taken. The state, however, does not rely on appellant's voluntary consent to the sample under section 316.1932, Florida Statutes (1982 Supp.), as a basis for admitting the test results into evidence.
[3] The presence of 0.10 percent or more by weight of alcohol in the person's blood is prima facie evidence that such person is under the influence to the extent his normal faculties are impaired. § 316.1934, Fla. Stat. (1982 Supp.).