487 So.2d 1092 (1986)
STATE of Florida, Appellant,
v.
Charles Leighton WILLIAMS, Appellee.
No. BF-145.
District Court of Appeal of Florida, First District.
March 20, 1986.
Rehearings Denied May 16, 1986.
*1093 Jim Smith, Atty. Gen., Patricia Conners, Asst. Atty. Gen., Tallahassee, for appellant.
Hal A. Davis, Quincy, for appellee.
ERVIN, Judge.
The state appeals from a final order which dismissed an information on the ground of the court's lack of jurisdiction. The order found that the state attorney's office had inadvertently and unintentionally granted to appellee transactional immunity. We reverse with directions.
Appellee was charged by information with two counts of selling cocaine in Gadsden County, Florida. While the charges were pending against him, he was subpoenaed to the state attorney's office to give testimony for the purpose of aiding an investigation involving the trafficking of narcotics in Leon County. At the outset of appellee's deposition testimony, the assistant state attorney explained to him:
You've been served with a subpoena from the State Attorney's Office, pursuant to an investigation that's ongoing.
* * * * * *
As far as the subpoena is concerned, the effect of it is going to be to require you to answer questions that we ask of you. In exchange, however, we will be granting to you what is called use immunity, which means that anything you say today cannot be used against you in court at a later time. So any criminal activity you may admit to today on the record will not be used against you.

(emphasis supplied) Immediately after making the above comments, in response to defense counsel's request for transactional immunity, the assistant state attorney replied that he was unable to do so. Later, during the same deposition, appellee was asked whether he had ever been in possession of, or had bought, sold or delivered any contraband substances, and after the assistant state attorney again reiterated that the state was granting appellee "use immunity", appellee answered that he had been so involved in Gadsden County. He additionally admitted that he had sold cocaine to a Georgia undercover police officer. At a later stage of the deposition, the assistant state attorney stated for the record that "the State is granting this witness use immunity for any answers he may give in this deposition." (emphasis supplied) He further explained that although use immunity would prevent the state from charging appellee with any offenses, based upon the matters which appellee had testified to, such immunity would not apply to the charge of perjury. Finally, at the conclusion of the deposition, the state once again advised the appellee that he was granted "use immunity as to any offense for which you admit to during questioning." (emphasis supplied)
Subsequently, a motion to dismiss for lack of jurisdiction was filed, alleging that the assistant state attorney's statements during the taking of the deposition had the effect of granting appellee immunity from prosecution for the two pending charges, and that appellee had "made statements of and concerning" those charges. In granting the motion, the court made the following comments:
You've got a man who is not  he may very well know what transactional immunity is and he may very well know what use immunity is, or he may very well not. But the fact of the matter is that he is *1094 the one who is told in one breath, "You must answer these questions." In the next, that, "Any criminal activity you may admit to today on the record will not be used against you." I think he's telling him just as plain as anything, "If you admit that you sold cocaine to Officer Hufstetler, we will not use that against you." Now, I don't think that what that's talking about is, "We will not use your statement against you." I think what he has done, unwittingly, and inadvertently, is to immunize the man from prosecution in these Gadsden County cases. And I don't think that's what he intended to do, or maybe he did intend to do it.
* * * * * *
I think that unwittingly and inadvertently the assistant state attorney, not Mr. Combs who is charged with the responsibility of prosecuting this case in Gadsden County, but that the state attorney's office in the Second Judicial Circuit, speaking through Mr. White, did in fact inadvertently grant immunity to Mr. Charles Williams.
We cannot agree with the court's reasoning. Before its amendment in 1982, Section 914.04, Florida Statutes, contained a provision, stating: "[N]o person shall be prosecuted ... for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise". (emphasis supplied) The effect of the above statute was to grant both "use and transactional immunity to one who testifies under the circumstances it delineates." Jenny v. State, 447 So.2d 1351, 1353 (Fla. 1984). The above provision was deleted by Chapter 82-393, Section 1, Laws of Florida. As amended, Section 914.04, Florida Statutes (1983), provides:
No person who has been duly served with a subpoena or subpoena duces tecum shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, or state attorney upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no testimony so given or evidence so produced shall be received against him upon any criminal investigation or proceeding.

emphasis supplied.
The amended statute confers no authority on the state to grant a witness transactional immunity. The distinction between the two types of immunity was clearly stated in State v. Harris, 425 So.2d 118, 119 (Fla. 3d DCA 1982): "The former [use immunity] simply forbids the testimony given under the immunity grant to be used against the witness in any criminal prosecution of him; the latter [transactional immunity] provides the witness with immunity from prosecution for the matter concerning which his testimony was elicited." Transactional immunity "`not only immunize(s) the witness for any use of his testimony or the fruits thereof in a subsequent trial but it ... also provide(s) absolute immunity against future prosecution for the offense to which the question relates.'" Novo v. Scott, 438 So.2d 477, 478 (Fla. 3d DCA 1983), review den., 446 So.2d 100 (Fla. 1984) (quoting Note, Immunity From Prosecution: Transactional Versus Testimonial or Use, 17 S.D.L.Rev. 166, 173 (1972)).
Because transactional immunity is a creature of statute, State v. Schroeder, 112 So.2d 257 (Fla. 1959); Stancel v. Schultz, 226 So.2d 456 (Fla. 2d DCA 1969), even if it can be reasonably assumed that the assistant state attorney in the case at bar intended to grant transactional immunity, he possessed no authority to extend such immunity to appellee. Nor is any constitutional provision necessarily implicated by such an interpretation. Indeed, under the federal constitution, it is only necessary that a witness be given use immunity in order to compel his testimony. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 *1095 L.Ed.2d 212 (1972); Tsavaris v. Scruggs, 360 So.2d 745 (Fla. 1977). Moreover, the Fifth Amendment, establishing the privilege against self-incrimination, does not require that immunity statutes preclude all uses of immunized testimony. United States v. Apfelbaum, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).
In holding that the state had no authority to grant transactional immunity to the defendant, we are aware that there is substantial authority recognizing that under extraordinary circumstances, a court  not the prosecution  may be empowered to grant a defense witness use immunity, where to deny it would be to violate his due process rights to a fair trial. See, e.g., United States v. Chagra, 669 F.2d 241 (5th Cir.1982); United States v. Turkish, 623 F.2d 769 (2d Cir.1980); United States v. Praetorius, 622 F.2d 1054 (2d Cir.1980). This was in fact required in United States v. Morrison, 535 F.2d 223 (3d Cir.1976), upon a showing of prosecutorial abuse. No similar abuse occurred in the present case. Even if we could agree that the state still retains the inherent power to confer transactional immunity to a defendant, despite the absence of statutory authority permitting it to so act, we cannot agree with the lower court that the effect of the prosecutor's comments, inadvertent or otherwise, was to grant transactional immunity.
The language used by the assistant state attorney, upon which the lower court placed particular emphasis in entering the order to dismiss, stating that "any criminal activity you may admit to today on the record will not be used against you", was clearly consistent with the definition of use immunity: forbidding any incriminating testimony given by a witness to be used against him in a future prosecution. We therefore regard the statements made by the assistant state attorney as consistent during all stages of the deposition, and made with only one purpose in mind: to grant to the defendant, in exchange for his deposition testimony, use immunity.
The state, at any future trial of appellee, will have the burden of showing that it "`had an independent, legitimate source for the disputed evidence'". Kastigar v. United States, 406 U.S. at 460, 92 S.Ct. at 1665, 32 L.Ed.2d at 226 (quoting Murphy v. Waterfront Comm'n, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 1609 n. 18, 12 L.Ed.2d 678, 695 (1964)). This burden, moreover, is a "heavy burden of proving that all of the evidence ... [the government] proposes to use was derived from legitimate independent sources." 406 U.S. at 461-462, 92 S.Ct. at 1665, 32 L.Ed.2d at 227. In that the statute provides both use and derivative-use immunity, Novo v. Scott, the use of any incidental facts derived from the witness's testimony regarding any criminal transaction must also be barred from admission against him. State ex rel. Hough v. Popper, 287 So.2d 282, 284 (Fla. 1973).
The lower court's order of dismissal is reversed, and the cause is remanded for further consistent proceedings.
WIGGINTON, J., and McCORD, GUYTE P., Jr. (Ret.), Associate Judge, concur.