DELL, Judge.
The State of Florida appeals from an order granting a motion to suppress results of a breathalyzer test.
Appellee struck a swimmer while operating his boat off Singer Island. A Florida Marine Patrol officer stated that when he arrived at the scene he smelled the odor of alcohol on appellee’s breath and saw numerous empty beer cans on the boat. Fifteen minutes after the mishap three other Marine Patrol officers arrived on the scene but did not notice any alcohol on appellee’s breath. The officers gave appellee permission to move his boat from Singer Island Beach through the Lake Worth Inlet to Phil Foster Park. The officers indicated that appellee appeared capable of operating his boat and that he was not behaving unusually and that his speech was not impaired. The officers did not place appellee under arrest. However, approximately two and one-half or three hours later the Marine Patrol officers decided to offer Mr. Floyd a breathalyzer test because the victim had died. One of the officers requested appellee to accompany him to the Florida Highway Patrol station. The officer told appellee that the Marine Patrol would conduct their investigation and then turn their results over to the state attorney’s office and that the state attorney’s office would decide whether to file charges. Appellee exhibited no behavior that would have given the officers probable cause to believe he was intoxicated. At the Highway Patrol station the following occurred between Trooper DiPace and appel-lee:
Officer: Right now we are going to offer you the opportunity to take a breathalyzer test. Do you wish to take it? Appellee: Do I wish to take it?
Officer: Well, are you consenting to take it?
*1181 Appellee: Yes, I am consenting to take it.
Officer: OK. The time is now 4:54 P.M.; we will retire to the breathalyzer.
The results of the test showed a blood alcohol content of .09 percent. Appellee was not arrested until approximately two months after the accident.
At the hearing on the motion to suppress, the following exchange occurred between the court, the defendant and the state:
THE COURT: Do you both agree that the legal issue or question is, if the officers had probable cause to test him, the test is valid. If they had no probable cause, the test is invalid.
Do you both agree that is the issue?
DEFENSE ATTORNEY: I think that is the issue, Judge. If they had probable cause to arrest him prior to the test, in other words, it’s got to be prior to the administration of the test because they have to have probable cause to even ask him to submit to the test to begin with.
You are correct. That is the ultimate issue in this case. If they had no probable cause to ask him to submit, then the test is invalid.
PROSECUTOR: I would agree with that.
The trial court concluded that the breathalyzer tests were not incident to a lawful arrest because the officers lacked probable cause and granted appellee’s motion to suppress.
The state contends the trial court erred when it granted the motion to suppress because the defendant consented to take the breathalyzer examination. Appel-lee correctly asserts that the state failed to raise the issue of consent and agreed that the motion to suppress should be decided on whether the state had probable cause to believe appellee was intoxicated when the officers requested that he submit to a breathalyzer examination.
Section 327.353, Florida Statutes (1985), governs the administration of blood tests in cases of death or serious bodily injuries arising out of the operation of a boat: Blood test for impairment or intoxication in cases of death or serious bodily injury; right to use reasonable force.—
(l)(a) Notwithstanding any recognized ability to refuse to submit to the test provided in s. 327.352, if a law enforcement officer has probable cause to believe that a vessel operated by a person under the influence of alcoholic beverages or controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof or the presence of controlled substances therein_ [Emphasis added].
Section 327.352 provides in pertinent part:
(l)(b) Any person who operates a vessel within this state shall submit to an approved chemical breath test to determine the alcoholic content of the blood ... if that person is lawfully arrested for any offense allegedly committed while he was operating a vessel while under the influence of alcoholic beverages or controlled substances. The breath test shall be incidental to a lawful arrest administered at the request of a law enforcement officer who has probable cause to believe such person was operating the vessel within this state while under the influence of alcoholic beverages.
The trial court stated in its findings:
It was only after the disclosure that [the victim] had died that as a procedural matter the Defendant was requested to accompany [the officer] to the Florida Highway Patrol Headquarters and requested to submit to an intoxilyzer examination. The Defendant was continually led to believe that his cooperation was required to assist the Florida Marine Patrol in the investigation of an accident; and never informed that he was the focus of any criminal investigation.
We affirm the order suppressing the breathalyzer results for three reasons. First, Trooper DiPace did not administer the breathalyzer test in accordance with sections 327.352(l)(b) or 327.353, Florida Statutes (1985), since he did not have prob *1182 able cause to believe appellee operated the boat under the influence of alcohol. Second, it appears clear that the state effectively waived the issue of consent at the hearing on the motion to suppress. Third, the state failed to prove that appellee gave his consent freely and voluntarily and not because of acquiescence to lawful authority when he agreed to the breathalyzer examination. See Mobley v. State, 335 So.2d 880 (Fla. 4th DCA 1976).
AFFIRMED.
DOWNEY, J., concurs.
WALDEN, J., dissents without opinion.