## STATE OF FLORIDA v TIMMONS

Case No. 89-21019

Thirteenth Judicial Circuit, Hillsborough County

October 29, 1990

### APPEARANCES OF COUNSEL

**Clay Yates, Esquire,** Assistant State Attorney, for plaintiff.

**Paul D. Johnson, Esquire** and **J. Michael Hayes, Esquire,** for defendant.

### OPINION OF THE COURT

RICHARD A. LAZZARA, Circuit Judge.

*ORDER ON DEFENDANT'S POST-TRIAL MOTIONS*

THE COURT has for its consideration the following post-trial motions filed by the Defendant: Motion for New Trial, Renewed Motion for Judgment of Acquittal, Motion in Arrest of Judgment and Motion for Discharge. The Court conducted two hearings as to these motions on October 15, 1990 and October 19, 1990 and reserved ruling due to the importance of the issues raised. The Court has pondered long and hard about the claims raised by the Defendant as to why he did not receive a fair trial and the counter arguments advanced by the

State as to why he did receive a fair trial. The Court compliments all counsel involved in these post-trial proceedings for their diligence and hard work in framing and arguing the difficult issues raised for this Court's consideration and resolution.

After carefully considering the arguments of counsel, both written and oral, the evidence presented during the course of the Defendant's trial, and the applicable law, both submitted by counsel and discovered by the Court during the course of its independent research, the Court is of the opinion that the Defendant's Renewed Motion Judgment of Acquittal, Motion for Discharge and Motion for Arrest of Judgment should be denied. The Court finds that the verdicts are not contrary to the greater weight of the evidence nor was the evidence legally insufficient to justify the jury's verdicts of guilt.[1]

However, the Court determines that under the law it is compelled to find that the Defendant is entitled to a new trial based on errors which took place during the course of his trial which prejudicially affected the fairness and outcome of the trial. The Court's reasons are as follows.

First, the State should not have been permitted on redirect examination to "beg" witness Glenz to tell the jury if he had been untruthful in his prior trial testimony. This error was later compounded when the State was allowed again to implore witness Glenz to tell the jury about any prior untruths he may have told them previously or about any prior untruths "in any other aspect that concerns this case" and then attempt to confer immunity upon him for prejury in connection with a pre-trial deposition.[2] After the Court overruled the Defendant's objection to this procedure the State then proceeded again to implore witness Glenz to let the jury know if anything he had told them was inaccurate.

The Court finds that this redirect examination technique severely prejudiced the Defendant's right to a fair trial in that its obvious effect was to bolster the credibility of this crucial witness in the eyes of the

---

[1] Although the Court agrees there was much conflict in the evidence, the Court is still of the opinion that the evidence sanctions the jury's verdicts both as to sufficiency and weight. Indeed, the jury resolved certain conflicts in favor of the Defendant by acquitting him of the more serious charges of manslaughter by culpable negligence and manslaughter DUI.

[2] Although the State "limited" the scope of its immunity offer to the witness to a pre-trial deposition, it is reasonable to conclude that the jury, the members of which were not versed in the implications of the law of immunity, could have constructed this as a "blanket" offer of immunity which applied to all the testimony of the witness, both pre-trial and trial.

121

jury.[3] That is, it is reasonable to conclude that the jury was left with the distinct perception that since the witness no longer could be prosecuted for perjury, he must necessarily be telling the truth. Unfortunately, such a perception would be based on a false assumption of the law of immunity. Under the law promulgated by the Florida legislature, Florida Statute 914.04, a prosecution for prejury is allowable when one lies while giving an immunized statement. *Baker v State,* 480 So.2d 659 (Fla. 5th DCA 1985). Although witness Glenz as a subpoenaed witness for the State acquired used and derivative use immunity with regard to the events about which he testified, he did not have immunity for perjury committed while testifying about these events. Moreover, to the extent that the State attempted to grant him "transactional immunity" for perjury, the law will not sanction such an action. *State v Williams,* 487 So.2d 1092 (Fla. 1st DCA 1986). (Assistant state attorney had no authority to grant transactional immunity under Florida law.)

The Court's finding as to this issue is not to be construed as a finding that the State by pursuing this questioning of the witness was guilty of willful and malicious prosecutorial misconduct. Indeed, the State's technique is understandable given the cross-examination of the witness by Defendant's counsel. But whatever the motivation, such a line of questioning was still unfairly prejudicial to the Defendant and improperly bolstered the credibility of one of the State's essential witnesses. *cf. Hernandez v State,* 22 So.2d 781, 785 (Fla. 1945). (It was improper for the State Attorney to state in the presence of the jury that "He perjured himself then or now, and if he has perjured himself we want to know it.")

Second, it was error to fail to give a requested instruction on reckless driving and to fail to provide the jury with an appropriate verdict choice with reckless driving as a lesser included offense. Although the Court felt confident in denying these requests at trial based on *Barritt v State,* 531 So.2d 338 (Fla. 1988), upon reflection the Court is of the opinion that it interpreted *Barritt* too narrowly. Instructive in that regard is *State v Manno,* 550 So.2d 31 (Fla. 3d DCA 1989), which the Court also considered at trial but likewise rejected. After careful consideration the Court now construes *Barritt* and *Manno* to mean that if it is undisputed that death in a vehicular homicide setting is

---

[3] There can be no question that this witness was crucial to the State's case. Without reciting all of the evidence he offered on behalf of the State against the Defendant, it is enough to say that in return for his "truthful testimony" the State allowed him to plead no contest to reckless driving after he had been charged with two counts of manslaughter by culpable negligence and two counts of culpable negligence.

caused by the conduct of the defendant then an instruction as to reckless driving is not appropriate. There is no question in this case that the main focus of this trial from voir dire to closing argument both on the part of the State and the Defendant was the issue of whether the Defendant by his conduct caused the death of the decedents. Indeed, the Court itself had to craft a special instruction as to causation. Accordingly, since it was hotly disputed that the death of the decedents were caused by the conduct of the Defendant, or, put another way, that their deaths occurred as a result of his conduct in the accident, the Court should have given a jury instruction on reckless driving with an appropriate verdict form adding reckless driving as a lesser included offense. Failure to do so was error. *State v Wimberly,* 498 So.2d 929 (Fla. 1986).

Third, it was also error to fail to define reckless driving to the jury in the context of the special causation instruction. The Court denied the Defendant's request to do so in light of *Jackson v State,* 456 So.2d 916 (Fla. 1st DCA 1984). But again the Court misconstrued the import of *Jackson. Jackson* clearly holds that in the basic instructions to the jury as to vehicular homicide it is not necessary to define separately reckless driving. However, in this case, the Court gave a separate special instruction as to causation. In that instruction the Court used the phrase "reckless driving" in two places as well as the phrase "reckless operation" but did not otherwise define those terms for the jury. In failing to do so the jury was not fully and completely charged as to the applicable law. *Steele v State,* 561 So.2d 638, 645 (Fla. 1st DCA 1990).

Finally, it was error to allow the State on redirect examination of witness DiMicco to read a portion of his deposition which included a hearsay statement of a person known as "Mike" (later identified as Mike Blanchard) relating to the issue of speed. Mr. Blanchard did not testify at trial and thus was not otherwise subjected to cross-examination about the statement attributed to him in DiMicco's deposition to the effect that he, meaning Mr. Blanchard, had previously indicated that the speed of the vehicles driven by Glenz and the Defendant was 100 miles per hour. There can be no question that the speed of the vehicles driven by Glenz and the Defendant was in dispute. By allowing this hearsay statement as to an uncalled witness's estimate of speed to be placed before the jury denied the Defendant his right to confrontation guaranteed to him by the Sixth Amendment to the United States Constitution. In essence, the jury was permitted to hear a non-testifying declarant's out-of-court incriminating statement which was not essential to rehabilitate witness DiMicco. *cf. Asberry v State,*

15 FLW D2538 (Fla. 1st DCA 10/10/90).[4] Moreover, to the extent that the attempt to rehabilitate witness DiMicco with this portion of his pre-trial deposition was relevant, its probative value was substantially outweighed by the danger of unfair prejudice to the Defendant and it should have been excluded. Florida Statute 90.403[5]

The Court has also carefully considered the other issues raised by the Defendant in seeking a new trial but finds that they do not amount to error, or if error, they did not deprive the Defendant of a fair trial.[6]

This was a close case in terms of criminal responsibility on the part of the Defendant.[7] But before this Court can impose sanctions for criminal responsibility it must insure that the jury's verdicts of guilt assessing such criminal responsibility were not infected with prejudicial error. In that regard this Court undertook an analysis as to whether

[4] This statement of Mr. Blanchard's satisfies all of the three criteria of inadmissible hearsay in that he was not testifying under oath, he did not testify in Court so that the jury could observe and evaluate his demeanor and truthfulness and, of prime importance, he was not subjected to cross-examination to test the truthfulness of his statement. *State v Freber,* 366 So.2d 416, 427-428 (Fla. 1978). This legal observation is significant because in the presence of the jury while undergoing examination by both counsel the witness DiMicco's testimony as to speed changed to 80 miles per hour. However, the statement attributed to Mr. Blanchard as to speed, by not being tested by cross-examination, stood unrefuted before the jury. Moreover, to add to the prejudicial effect of this untested statement by Blanchard, the State elicited from other witnesses that he was in a position to see what DiMicco saw.

[5] The Court allowed this rehabilitation of witness DiMicco because at trial it was of the opinion that such rehabilitation was designed to show the jury the "reference point" from which the witness derived the figure of "100 miles per hour." Upon reflection it is clear that the State could have accomplished this objective without prejudice to the Defendant's right of confrontation by eliciting only that portion of the deposition of witness DiMicco starting at Line 16 of Page 33.

[6] These claims included failure to permit the Defendant to impeach the State's expert (Dr. Howell) wit a certain text; allowing this same expert and a lay witness (Furr) to render certain opinions as to causation; allowing a lay witness (DiMicco) to give his opinion as to speed; improper restriction of cross examination; and failure to grant motions for judgment of acquittal made during the course of the trial.

[7] As noted before, the jury found the Defendant not guilty of the more serious charges of manslaughter by culpable negligence and manslaughter DUI. Further exacerbating the closeness of this case was the haphazard police investigative techniques employed in the case. As an example, even though the actual length of skid marks was a critical issue in the case so as to be utilized to arrive at an accurate determination of speed, inexplicably, the chief investigating officer lost his notes which detailed the length of skid marks he found at the scene. However, this last statement should not be construed as an adverse comment on the prosecution of this case by the State. It did an admirable and commendable job in the presentation of its case to the jury.

124

the errors the Court has found to exist can be construed as harmless beyond a reasonable doubt. *State v DiGuilio,* 491 So.2d 1129 (Fla. 1986). This Court cannot so conclude in that the Court is unable to say beyond a reasonable doubt that the errors found to exist did not contribute to the jury's verdicts of guilt. In the Court's opinion the errors noted when considered together were substantial and prejudicial in nature, deprived the Defendant of a fair trial and mandate that the Defendant be afforded a new trial as to the remaining charges of vehicular homicide.

In conclusion, the Court is keenly aware of the emotional and psychological impact this Order will have by prolonging the final legal resolution of a tragic event. But however much this Court may wish to consider such an issue in ruling on the Defendant's Motion for a New Trial, it simply cannot do so under the law. Of course, the State has the remedy of appeal should it disagree with the Court's findings and conclusions in this Order.[8]

Accordingly, for the reasons expressed, it is ORDERED AND ADJUDGED as follows:

1. The Defendant's Renewed Motion for Judgment of Acquittal be and the same is hereby denied.

2. The Defendant's Motion for Arrest of Judgment be and the same is hereby denied.

3. The Defendant's Motion for Discharge be and the same is hereby denied.

4. The Defendant's Motion for New Trial be and the same is hereby granted. In that regard the Defendant's sentencing date of November 7, 1990 at 1:30 p.m. is cancelled and the Department of Corrections is directed to cease the preparation of the Presentence Investigation previously ordered by the Court.

IT IS FURTHER ORDERED AND ADJUDGED that the Court will conduct a Status Conference in this cause on Friday, the 2nd day of November, 1990 at 8:30 a.m. for the purpose of determining whether the State of Florida will appeal this Order and, if not, to set a

---

[8] So as not to jeopardize the State's right to appeal, the State is put on notice that this Court is not authorized to entertain or consider a petition for rehearing addressed to this Order unless it can be shown by the Order is predicated on fraud or clerical error. *Burton v State,* 296 So.2d 79 (Fla. 4th DCA 1974); *vacated, State v Burton,* 314 So.2d 316 (Fla. 1975) and that a petition for rehearing not based on fraud or clerical error does not toll the time for the filing of a notice of appeal. *Owens v Jackson,* 476 SO.2d 264 (Fla. 1st DCA 1985).

new trial date. The Defendant shall be present unless his presence is waived in writing and he shall remain free on the same cash bond previously posted in this case.

DONE AND ORDERED in Chambers at Tampa, Hillsborough County, Florida, on this the 29th day of October, 1990.