GRIFFIN, Chief Judge.
The State of Florida appeals an order suppressing evidence obtained by blood withdrawn from Appellee, Craig A. Henderson [“Henderson”].
On October 14, 1996, Henderson was arrested for leaving the scene of an accident involving death. Subsequent to his arrest, Henderson was transported to Orlando Regional Medical Center to undergo a physical examination and blood withdrawal. On January 16, 1997, the State charged Henderson by six count information with: (1) DUI manslaughter with failure to render aid or give information; (2) DUI manslaughter; (3) leaving the scene of an accident with death; (4) DUI; (5) DUI with property damage or personal injury; and (6) vehicular homicide.
On July 22, 1997, Henderson filed an amended motion to suppress evidence resulting from the blood withdrawal and body examination. Henderson alleged that the police had no court order or probable cause to require him to submit to the blood test and examination.
The court conducted a suppression hearing at which Trooper Pike of the Florida Highway Patrol, the lead investigator of the fatal accident, testified. Trooper Pike has been a trooper for ten and a half years and is trained in advanced accident investigation. Pike testified that shortly after 2:30 a.m. on October 14, 1996, he responded to an accident at the intersection of Sand Lake Road and Apopka Vineland Road. When he arrived, he found two cars in the center of the wide four-lane intersection; a dark-colored Camaro facing west and a green Pontiac facing northeast. Emergency personnel were already at the scene. The body of the deceased driver of the dark Camaro was still in the vehicle. The Pontiac was abandoned, the driver of that ear having fled the scene.
The Camaro had extensive damage to the left side; it appeared as if the Pontiac had driven into the door. Two sets of skid marks were found at the scene: one leading from the Camaro, the other from a third car which collided with the back of the Camaro after the initial accident. By the final resting place of the cars, Trooper Pike determined that the Camaro had been traveling northbound on Apopka Vineland Road and the Pontiac was making a left turn onto Sand Lake Road. There were no witnesses to the accident.
Pike determined, based on the lack of skid marks, that the Pontiac made no attempt to brake and avoid the collision. He determined that the driver of the Pontiac had pulled into oncoming traffic. He also determined that the Camaro was “definitely” in the intersection when the Pontiac pulled in front of it.
Pike’s further investigation revealed that the green Pontiac belonged to Prudential Insurance Company. Prudential informed him that the vehicle had been assigned to the defendant, Henderson, and provided Henderson’s address.
Trooper Pike went to Henderson’s home accompanied by two other officers. When Henderson opened the front door, Trooper Pike observed red marks on the inner part of Henderson’s forearms, between the wrist and elbow. Pike stated that he had observed similar injuries on persons who had been driving cars when the air bag deployed. At that point, Pike testified that he suspected Henderson as the driver of the Pontiac and read Henderson his Miranda warnings.
Pike testified that Henderson told him that his car had been stolen after he had returned home at about 12:30 in the morning from Pleasure Island. He told Pike that he had discovered that the car was missing when he woke up at 6:00 a.m. Henderson further told him that the ear had been stolen from his garage, and that the keys had been taken from his kitchen counter.
Trooper Pike testified that he asked Henderson to show him the shirt that he had been wearing on the previous evening. As Henderson walked to his bedroom, Pike smelled a “very faint” odor of what he thought was an alcoholic beverage. Henderson stated that he had not had any *1225 thing to drink since he had returned home at 12:30 a.m. Trooper Pike testified that Henderson stood and walked without any problems, that he had no difficulty understanding Henderson, and that at the time in question, nothing indicated that Henderson was impaired.
Trooper Pike testified that he believed there was probable cause that Henderson had left the scene of an accident because the car was assigned to him by Prudential, there appeared to be air bag burns on his arms, and he had given inconsistent stories to police officers regarding the theft of the Pontiac. Pike also testified that he believed alcohol was a factor in the accident because of the way the accident appeared to have occurred. Pike also testified that since the crash occurred at 2:30 a.m., and he still smelled a faint odor of alcohol on Henderson at 9:30 a.m., he must have had “quite a bit of alcohol before 12:30.” Pike further testified that these factors contributed to his belief that Henderson had been driving the Pontiac under the influence.
On November 10, 1997, the trial court entered a written order granting in part Henderson’s motion to suppress evidence from the blood withdrawal. The court noted that, although Trooper Pike smelled alcohol, Officer Pike did not observe any signs of impairment. Relying on State v. Floyd, 510 So.2d 1180 (Fla. 4th DCA 1987), the court held that the “mere odor of the impurities of alcohol, without more, is insufficient to establish probable cause that Defendant was operating a motor vehicle under the influence.” Therefore, the court found that even if the officer had probable cause to believe that Henderson was the driver of the vehicle involved, the court found that he did not have probable cause to believe that Henderson was under the influence of alcohol, and suppression was proper.
Section 316.1933, Florida Statutes (1997), reads in pertinent part:
316.1933 Blood Test for Impairment or Intoxication in Cases of Death or Serious Bodily Injury; Right to Use Reasonable Force
(1) Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 316.1932 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages ... has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer to a test of the person’s blood for the purpose of determining the alcoholic content thereof ... The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test ...
Here, as in Floyd, the officers’ observations of Henderson offered no indication that he was impaired. In this case, however, unlike Floyd, there was a seven-hour delay in locating Henderson, so that the observation of no impairment is of no value in attempting to evaluate probable cause. Trooper Pike plainly had probable cause to believe that Henderson was lying about the theft of the vehicle and about not being the driver of the vehicle involved in the accident. These circumstances, in combination with the circumstances of the accident and the smell of alcohol, were enough to establish the requisite probable cause to order the blood test. Jackson v. State, 456 So.2d 916 (Fla. 1st DCA 1984). See also State v. Cesaretti, 632 So.2d 1105, 1106 (Fla. 4th DCA 1994); State v. Silver, 498 So.2d 580, 581 (Fla. 4th DCA 1986), review denied, 506 So.2d 1043 (Fla.1987).
REVERSED.
COBB and ANTOON, JJ., concur.