PER CURIAM.
Robert McKay petitions for a writ of certiorari seeking to quash a trial court order compelling him to testify in a civil proceeding despite his Fifth Amendment, privilege against compelled self-incrimination, objection.
On May 13, 2004, this court denied the petition by order. This opinion follows.
“Certiorari will lie to review an order compelling discovery in a civil case over an objection that the order violates the Fifth Amendment privilege against self-incrimination.” Boyle v. Buck, 858 So.2d 391, 392 (Fla. 4th DCA 2003) (citing Magid v. Winter, 654 So.2d 1037 (Fla. 4th DCA 1995)). The reviewing court must determine whether the trial court’s discovery order departed from the essential requirements of law resulting in harm to the petitioner that cannot be remedied on plenary appeal. Id.
*670 McKay confessed and pled guilty to charges in a prior criminal proceeding arising from McKay’s employment with a cemetery. The charges included allegations of desecration of bodies and other violations of law in the manner in which the cemetery was operated. The negotiated plea agreement in the criminal case provides:
The Defendant will testify truthfully, completely and consistently with his pri- or statements to Law Enforcement, to any venue in which his testimony is required, both criminal and civil, in connection with the Menorah Gardens Palm Beach case. The State agrees that testimony given pursuant to this section in any venue is given pursuant to F.S. Section 914.04 as set forth herein. Nothing in this section, precludes the Defendant from asserting his Fifth Amendment privilege in any proceeding in order to obtain assurances or clarification that such testimony is indeed given pursuant to the above terms.
McKay and the prosecutor negotiated to include in the agreement the language providing that testimony under the agreement was pursuant to section 914.04, Florida Statutes (2003).
Section 914.04 grants use and derivative use immunity to a witness compelled by subpoena to testify in a criminal proceeding:
No person who has been duly served tuith a subpoena or subpoena duces te-cum shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, or state attorney upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no testimony so given or evidence so produced shall be received against him upon any criminal investigation or proceeding.
(Emphasis added.)
During discovery proceedings in this civil case, which relates to the offenses at the cemetery, McKay objected on Fifth Amendment grounds when the plaintiffs sought to take his deposition. McKay argued that Section 914.04 does not apply to testimony given in a civil proceeding and that the state lacked authority to grant statutory immunity. The trial court granted plaintiffs’ motion to compel McKay to testify according to his plea agreement. The court found the protection of the agreement sufficiently overcame any fear of prosecution justifying the claim of privilege. McKay petitions for certiorari review.
TRANSACTIONAL VERSUS USE/DERIVATIVE USE IMMUNITY-
 The distinction between transactional and use immunity is important in this case. Use immunity prevents authorities from using the testimony against the witness in any criminal prosecution of the witness. Zile v. State, 710 So.2d 729, 732 (Fla. 4th DCA 1998). Derivative use immunity prohibits the government from using evidence derived from the testimony, including investigatory leads, unless a source for the evidence independent of the compelled testimony can be shown. See Kastigar v. United States, 406 U.S. 441, 461, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (setting forth independent source rule: “ ‘Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the *671 burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.’ ”) (citation omitted). ■
In contrast, transactional immunity provides complete immunity for the subject matter of the testimony elicited. Zile, 710 So.2d at 732. Transactional immunity provides significantly broader protection than the Fifth Amendment in certain respects. Kastigar, 406 U.S. at 453, 92 S.Ct. 1653. The Fifth Amendment’s sole concern is protection from compelled self-incriminating testimony. Id. . The Fifth Amendment does not prevent prosecution for one who invokes it. Id. Transactional immunity, however, does not prevent authorities from using the testimony to prosecute for other transactions.
The statute at issue in this case once provided for both use/derivative use immunity and transactional immunity. See, e.g., Alford v. Cornelius, 380 So.2d 1183 (Fla. 5th DCA) (to gain transactional immunity, compelled testimony must be relevant and have substantial connection with the subject of the inquiry), rev. denied, 389 So.2d 1107 (Fla.1980). The statute was amended, and transactional immunity was no longer authorized. Meek v. State, 566 So.2d 1318, 1321 n. 1 (Fla. 4th DCA 1990) (“In 1980, section 914.04 provided for both transactional and use immunity. The legislature amended it in 1982 to exclude transactional immunity. Today the statute provides only for use immunity.”).
State v. Williams, 487 So.2d 1092 (Fla. 1st DCA 1986), held that the 1982 amendment of the statute meant the state can no longer grant transactional immunity under the statute. Id. at 1094. Williams, however, does not address whether the state can grant transactional immunity as part of a plea agreement. The testimony in Williams fell within the purview of the statute because the witness in that case was subpoenaed to testify in a criminal proceeding. In the absence of a bargained-for plea agreement, the statute’s authorization for mere use immunity is controlling. The statute does not expressly prohibit the grant of immunity by agreement.
RELEVANT LAW AND ANALYSIS
McKay’s argument relies primarily on language found in Randall v. Guenther, 650 So.2d 1070 (Fla. 5th DCA 1995). In Randall, Walther Guenther filed a civil suit against Anne Randall alleging Randall transferred almost all his assets to her own personal account without his consent. Id. at 1071. The trial court ordered Randall to disclose all the assets she received from Guenther. Randall learned that the state had initiated a criminal investigation into the matter. , The trial court granted Randall’s motion and restricted the discovery because of the Fifth Amendment issues.
In response, Guenther filed a motion to compel discovery attaching letters from the state attorney purporting to grant Randall use and derivative use immunity under section 914.04 for deposition testimony in the civil case. The trial court ruled that Randall could be compelled to testify because of the grant of immunity. Id. at 1072.
The fifth district granted Randall’s petition for a writ of certiorari and quashed the trial court’s order. The court found that case law in the area has consistently held that the statute must be construed strictly and-that a grant of immunity under the statute must be confined to its parameters. See DeBock v. State, 512 So.2d 164, 167 (Fla.1987), cert. denied, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988) (statute inapplicable to bar disciplinary proceedings); Delisi v. Smith, 423 *672 So.2d 934, 939 (Fla. 2d DCA 1982), rev. denied, 434 So.2d 887 (Fla.1983) (statute inapplicable to civil RICO proceeding). Thus, the statutory immunity could be applied only to testimony given in a criminal proceeding and not to testimony elicited in a civil proceeding. Randall, 650 So.2d at 1072.
The court, however, went on to reject Guenther’s contentions that the state’s letters were a valid grant of contractual immunity. In so holding, the court made some broad statements suggesting there can be no contractual immunity in Florida. The court seemed to hold that Section 914.04 is the sole means by which the state can grant immunity. Id. The court wrote, “[I]t is well-settled that ‘immunity from prosecution must derive from a specific statutory or constitutional provision.’ ” Id. (quoting Stancel v. Schultz, 226 So.2d 456, 459 (Fla. 2d DCA 1969)); see also State v. Schroeder, 112 So.2d 257, 261 (Fla.1959) (noting that [i]mmunity from prosecution is a creature of statute”).
Randall’s broad language is dicta because the letters at issue in that case were not enforceable as a contract. No indication is given that the letters were part of a plea agreement or that the letters were bargained for, i.e. with consideration flowing from both sides. See Metellus v. State, 817 So.2d 1009 (Fla. 5th DCA) (holding that rules of contract law apply to plea agreements), rev. granted, 833 So.2d 774 (Fla.2002). The letters were nudum pac-tum and unenforceable.
McKay’s case is distinguishable. McKay entered a negotiated plea agreement in which he was placed on probation in exchange for his guilty pleas and confessions on two counts. McKay agreed to testify completely and consistently with his prior statements to law enforcement in any criminal or civil proceeding dealing with the subject matter of the agreement. As part of the bargain, the state agreed “not to file any new charges against the DEFENDANT that are related to the SUBJECT MATTER, except for crimes of violence.” The state, in essence, granted contractual, transactional immunity for any other non-violent crime committed by McKay while at the cemetery.
This type of plea agreement is enforceable. See Rosenquist v. State, 769 So.2d 1051 (Fla. 2d DCA 2000) (holding agreement that defendant would not be charged with any more crimes if he was truthful in providing information to law enforcement was violated when defendant failed polygraph tests), rev. denied, 817 So.2d 850 (Fla.2002). Unlike the situation in Randall, the state’s grant of “immunity” in this case is based on a negotiated plea agreement and not solely on a purported “gift” of immunity under section 914.04.
Stancel v. Schultz, 226 So.2d 456, 459 (Fla. 2d DCA 1969), one of the cases relied on heavily by the fifth district in Randall, states that immunity must derive from a specific statutory or constitutional provision. Randall does not address the fact that the court in Stancel analyzed whether the “contract for immunity” at issue was enforceable. Stancel, 226 So.2d at 460. The court ruled that the contract could not be enforced outside the territorial jurisdiction of the state attorney who entered into the agreement. Id. Thus, Stancel acknowledges the existence of contractual immunity. The due process clause of our state and federal constitutions requires enforcement of plea agreements and resulting contractual immunity.
STATUTORY VERSUS CONTRACTUAL IMMUNITY
Section 914.04 does not eliminate a prosecutor’s discretion in granting *673 immunity in connection with a valid plea agreement. Nevertheless, testimony, exchanged for “transactional immunity” (or a promise not to prosecute), as part of a plea agreement, is not equivalent to testimony compelled in a criminal proceeding pursuant to subpoena as contemplated by the statute.
The immunity contemplated by the statute serves different purposes than immunity which might be extended as part of a plea bargain. The purpose of the statute is to facilitate the state’s ability to prosecute crimes by making witnesses more likely to testify. Section 914.04 automatically grants the witness use and derivative use immunity even in the absence of a claim of Fifth Amendment privilege. Grant v. State, 832 So.2d 770 (Fla. 5th DCA 2002), cert. denied, 538 U.S. 980, 123 S.Ct. 1808, 155 L.Ed.2d 670 (2003). Grant finds that section 914.04 applies to the office of the statewide prosecutor, the prosecuting agency in McKay’s case. Id. at 773. The agreement with the statewide prosecutor in this case binds the state.
A grant of immunity under the statute would prevent any other sovereign from using the compelled testimony in any other criminal proceeding. See Costello v. Fennelly, 681 So.2d 926 (Fla. 4th DCA 1996) (holding that the Fifth Amendment requires a second sovereign to afford a person use and derivative use immunity for testimony originally “compelled” under statutory grant of immunity by. another sovereign).
Although McKay is correct that section 914.04 does not shield his testimony in this civil proceeding, McKay is protected, and essentially granted transactional immunity, by the separate promise-not-to-prosecute provision of the plea agreement. The agreement is valid, approved by the court, and enforceable. C.f. Ingram v. Prescott, 111 Fla. 320, 149 So. 369 (1933) (holding that'agreement not to prosecute is unenforceable if entered only with the state without the consent of the court); see also Johnson v. State, 460 So.2d 954 (Fla. 5th DCA 1984) (holding that jeopardy attaches when an unconditional plea agreement is accepted by the court in the absence of fraud on the part of the defendant or other grounds to rescind the agreement). Jeopardy would attach in McKay’s case when he fully complies under the agreement. The state would not be able to back out of the agreement once McKay fully complied.
Of course, the state could refuse to grant McKay immunity if he fails to live up to his end of the bargain. Conversely, the state could be compelled to specifically perform its end of the bargain (file no new charges for the transaction) if McKay fulfills his obligations under the agreement. See State v. Frazier, 697 So.2d 944 (Fla. 3d DCA 1997) (applying principles of contract law and finding that state, having reaped benefits of the agreement, must be held to suffer its detriments).
Promissory estoppel, or equitable immunity, would prevent the state from breaching its agreement if McKay relied on the state’s promise not to prosecute and this reliance worked to his detriment. See State v. Borrego, 445 So.2d 666 (Fla. 3d DCA 1984) (discussing when equitable immunity may be applicable).
As suggested in Frazier, basic fáirnéss, due process, would be offended if the state could back out of the agreement after the defendant has fully' performed. “[T]he state, above all parties, must keep its word.” Frazier, 697 So.2d at 945; see also Rowe v. Griffin, 676 F.2d 524 (11th Cir.1982) (setting forth a three-part test for when due process requires that the government abide by an agreement not to prosecute). C.f. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d *674 427 (1971) (holding that a defendant who pleads guilty as a result of a plea bargaining agreement has a due process right to enforcement of the bargain).
PROPRIETY OF THE WRIT
A litigant may assert the Fifth Amendment privilege when the litigant has reasonable grounds to believe that the response to a discovery request would furnish a link in the chain of evidence needed to prove a crime against the litigant. See Magid, 654 So.2d at 1038-39. As noted above, McKay has no reasonable grounds to fear further state prosecution as long as he complies with the agreement.
McKay asserts that the federal government could bring a prosecution under the dual sovereignty doctrine. See Booth v. State, 436 So.2d 36 (Fla.1983) (holding that double jeopardy is not violated by state and federal prosecutions for the same transaction). McKay does not point to any provisions of federal law under which he might reasonably be prosecuted or a basis for federal jurisdiction over his offenses. No federal charges are pending. McKay does not allege that any federal criminal investigation is ongoing.
Of course, McKay is not required to incriminate himself in this proceeding to protect his Fifth Amendment privilege. McKay, however, has failed to make any reasonable showing that the testimony, which he has already provided to law enforcement and agreed to testify consistently with, could possibly implicate any federal criminal statute. McKay fails to allege even a basis for federal jurisdiction over what appears to be a purely state-law matter.
McKay has not met his burden in this certiorari proceeding. He has not shown a reasonable probability that his deposition testimony would provide a link in the chain of evidence needed to prove a crime against him. Thus, the trial court did not depart from the essential requirements of law in compelling McKay’s testimony in accordance with the plea agreement.
CONCLUSIONS
McKay cannot receive immunity for his testimony in this civil case under section 914.04, Florida Statutes. Nevertheless, under the plea agreement, McKay received a promise that no new charges would be filed in connection with his acts at the cemetery. The agreement, in essence, provides transactional immunity.
In exchange for this promise, McKay pled guilty and agreed to testify in all subsequent criminal and civil proceedings consistently with his prior statements to law enforcement. This agreement is binding on the state as long as McKay performs his end of the bargain. If McKay fails to testify “truthfully, completely and consistently with his prior statements,” the state could rescind the agreement and file further charges. If McKay complies with the agreement, then the state is bound by due process, and equity, to abide by its promise not to prosecute.
The state’s plea agreement granting transactional immunity is not enforceable against the federal government because federal prosecutors were not a party to the agreement. See United States v. Roberson, 872 F.2d 597, 611 (5th Cir.1989) (concluding that state agreement for immunity could not bind the federal government, and thus curtail federal prosecutorial discretion, where no agreement was reached with federal prosecutors or regarding federal prosecution), cert. denied, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).
If a federal prosecution were to arise, federal prosecutors may or may not need to afford use and derivative use immunity. See Murphy v. Waterfront Comm’n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); United States v. Camp, 72 F.3d *675 759, 761 n. 2 (9th Cir.1995); Taylor v. Singletary, 148 F.3d 1276, 1283 n. 7 (11th Cir.1998). But see United States v. Eliason, 3 F.3d 1149, 1152 (7th Cir.1993).
See also Adam Harris Kurland, Lurking Pitfalls of Successive Prosecutions: Immunity, Plea Agreements, Promises Not to Prosecute, and Cooperation Agreements, 14 Crim. Justice 4 (Winter 2000) (“Anything short of receipt of a formal statutory immunity grant provides no legal protection concerning subsequent use of the testimony by another sovereign.”).
McKay has not lost the right to assert. his Fifth Amendment privilege if questions are asked beyond the scope of. his prior testimony. McKay may, not be compelled to incriminate himself for acts outside the scope of the agreement.
McKay must “tread lightly and make difficult risk assessments.” Kurland, supra at 9. McKay can refuse to testify if he reasonably believes the testimony would provide a link in the chain of evidence to prove a crime not covered by the, plea agreement, e.g. a federal or foreign state crime. By refusing, however, McKay would breach the plea agreement, and the state would no longer be bound to afford him transactional immunity. If this occurred, McKay would be entitled to withdraw his plea.
The trial court correctly determined that McKay was provided sufficient protection under the agreement and that he should be compelled to testify. McKay did not raise reasonable grounds supporting a fear. of further prosecution which would justify his invocation of the Fifth Amendment. The petition for writ of certiorari is denied.
FARMER, C.J., STONE and POLEN, JJ., concur.