731 So.2d 48 (1999)
Wade H. WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-01466.
District Court of Appeal of Florida, Second District.
March 19, 1999.
R. Jackson McGill, P.A., Sarasota, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee and Deborah F. Hogge, Assistant Attorney General, Tampa, for Appellee.
CAMPBELL, Acting Chief Judge.
Appellant challenges his judgment and sentence for DUI manslaughter and vehicular homicide. We affirm.
Appellant raises the following three issues in this appeal:
I. Whether the trial court erred by allowing into evidence the results of blood tests obtained from blood drawn from the appellant in violation of section 316.1933, Florida Statutes.
II. Whether the trial court erred in denying the appellant's motion in limine, and in allowing into evidence testimony concerning an unrelated incident which occurred at least two hours prior to the subject accident.
III. Whether the trial court erred in allowing into evidence testimony of the chief investigating officer which unfairly bolstered the testimony of another state witness.
We affirm without discussion Issues II and III. We write to explain why we also affirm in regard to appellant's first issue.
Appellant was charged in a two-count information with DUI manslaughter and vehicular homicide stemming from a one-car accident involving appellant, along with Jonathan Michael Walchok and Mark Jonathan Yates, who was killed in the accident. During the evening of November 23, 1996, the three boys met at appellant's home in Venice, and decided to go to Sarasota in Yates's vehicle. After they reached Sarasota, they stopped at a "Quick Stop," where Walchok went into the store and obtained a substantial quantity of beer. Appellant was seventeen years of age, Walchok was eighteen years old, and Yates was sixteen years old. After obtaining the *49 beer, they placed it into the trunk of the Yates vehicle and returned to appellant's home in Venice.
The boys sneaked the beer into appellant's home and began to drink it. At approximately midnight, the boys left appellant's home, with Yates returning to his home with his father's vehicle. Appellant and Walchok then went to the Yates home and picked up Mark Yates after he had gone home and sneaked back out. The boys then returned to Sarasota in appellant's automobile.
While the boys were "cruising" around Sarasota with appellant driving, they encountered a man in another vehicle. Yates told appellant that the person in the other car was staring at appellant and had "flipped him off." Appellant followed the other man until both vehicles reached a stop light. When both vehicles were stopped at the light, appellant got out of his car, ran up to the other man's vehicle, banged on the window, and yelled at the person in the car.
The light at the intersection changed and the other man drove off. Appellant went back to his car, and Walchok was in the driver's seat. They followed the man to what appeared to be his home. When they arrived, appellant got out of the passenger seat of his vehicle and yelled for the man to come out and fight him. He then urinated on the man's bumper and in the yard, got back into his car, and left with Walchok still driving. This incident occurred several hours prior to the accident.
The boys continued to ride around Sarasota, with Walchok still driving appellant's vehicle. They arrived at a dance club called "In Extremis" at approximately 2:00 a.m., on November 24, 1996, but never went into the club. As they were leaving the parking lot of "In Extremis," the boys encountered two girls in another car, and persuaded them to stop. The two girls and the three boys talked in a parking lot for approximately thirty minutes, then they left. Only one of the girls testified at trial. She testified that when the two groups parted, appellant appeared to be the driver of his car.
After the boys left the parking lot, they proceeded south to return home to Venice. At approximately 3:00 a.m., they encountered another car. The occupants of that car both testified that appellant, who appeared to be driving, was driving at great speed and appeared to try to run them off the road. As a result, appellant lost control of his car, it ran off the road and flipped over. Yates was trapped in the back seat and died of traumatic asphyxiation.
The driver of the other car, Melissa McKinney, made a U-turn and returned to let her passenger, Robert Morrice, assist those in appellant's car while McKinney went to the nearest pay phone to call 911. Morrice testified that when he got to appellant's car, appellant was wandering around on the driver's side of the upside down vehicle apparently in "shock" and yelling for someone to help him. Walchok had been thrown out of the vehicle and was unconscious on the ground in front of the vehicle and toward the passenger side. Walchok soon regained consciousness, and he and appellant began arguing with each other that the other was the driver of the vehicle. Morrice was unable to free Yates from the vehicle and could detect no vital signs.
Trooper Lawrence of the Florida Highway Patrol arrived at the scene at approximately 3:51 a.m. Trooper Lawrence determined that Yates was dead, and smelled alcohol on both Walchok and appellant. Walchok and appellant continued to claim to Trooper Lawrence that the other was the driver.
Trooper Lawrence contacted Corporal Carlock, who was the homicide investigator on call, and advised him of the situation. Trooper Lawrence was instructed by Corporal Carlock to obtain blood samples from both Walchok and appellant. Blood *50 was drawn from both boys at the scene by emergency medical personnel.
Appellant argues that the trial judge erred in refusing to suppress the results of the blood sample taken from appellant at the scene of the accident. Section 316.1933(1), Florida Statutes (1995), provides in pertinent part:
[I]f a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages ... has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of the person's blood for the purpose of determining the alcoholic content thereof.
Appellant argues that the blood obtained by Trooper Lawrence from appellant and Walchok at the scene, at the request of Corporal Carlock, did not meet the statutory requirements of section 316.1933, because neither Trooper Lawrence nor Corporal Carlock had probable cause to believe that one boy, as opposed to the other, was the driver of the vehicle.
When Trooper Lawrence arrived on the scene, he did not know who was driving the vehicle, and each boy said that the other was the driver. Trooper Lawrence conveyed this information to Corporal Carlock, who was en route from his home to the accident scene. Corporal Carlock instructed Trooper Lawrence to have blood drawn from both individuals, which was then performed by a paramedic at the scene.
Appellant argues that although Trooper Lawrence and/or Corporal Carlock may have had "reasonable cause" to believe that appellant or Warlock was operating a vehicle under the influence, and that a death or serious bodily injury was involved, they did not have "probable cause" to believe that appellant was the operator of the motor vehicle.
Appellant argues that Corporal Carlock and Trooper Lawrence could only have had probable cause as to one of the boys and without there being probable cause specifically as to appellant alone as the driver, the blood drawn pursuant to section 316.1933 was inadmissible.
We conclude that appellant's argument is too narrow a construction of the probable cause required by section 316.1933. Probable cause is a fluid concept that deals in probabilities, which include common sense conclusions by law enforcement officers. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). This court has said that "the facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which conviction must be based." State v. Heape, 369 So.2d 386, 389 (Fla. 2d DCA 1979) (citing State v. Outten, 206 So.2d 392 (Fla.1968)). The Fourth District has explained that, when analyzing probable cause to support a search warrant, "interpretation of the facts in a `common sense and realistic fashion'... may result in an inference of probable cause to believe that criminal objects are located in a particular place to which they have not been tied by direct evidence." State v. Powers, 388 So.2d 1050, 1051 (Fla. 4th DCA 1980). This reasoning is consistent with the view expressed by the United States Supreme Court in Gates that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 244 n. 13, 103 S.Ct. 2317.
Looking at what the officers knew in the instant case, there was certainly a "probability or substantial chance" that appellant was the driver of the car that killed Mark Yates.
Probable cause is not the same as beyond a reasonable doubt. Law enforcement was not required to know without *51 a doubt that appellant was the driver of the car in order to take the blood sample from him. Appellant's suggestion that law enforcement officers cannot have probable cause to search multiple suspects has been rejected by this court. See State v. Hernandez, 706 So.2d 66 (Fla. 2d DCA 1998) (holding that the odor of marijuana gave officers probable cause to believe members of a group possessed marijuana and therefore a search of each person present was proper). The smell of alcohol on appellant's breath, coupled with the traffic fatality and Walchok's statement that appellant was the driver, gave law enforcement probable cause to draw appellant's blood for blood alcohol testing.
Appellant suggests that the police must have probable cause that he was the only one who committed the crime before they could obtain his blood sample under section 316.1933. Clearly, that is not the case under Hernandez. Moreover, if appellant had said nothing at the scene, given Walchok's statement that appellant was driving and the fact that law enforcement officers smelled alcohol on appellant's breath and knew that there had been a fatality in the crash, no one would contest that the officers had probable cause to order blood testing. Appellant's evasive action in claiming that he was not the driver cannot destroy that probable cause.
The evidence produced at appellant's trial overwhelmingly supports the fact that appellant was driving his vehicle when the accident occurred that resulted in the death of Mark Yates.
Affirmed.
THREADGILL and CASANUEVA, JJ., Concur.