771 So.2d 16 (2000)
STATE of Florida, Appellant,
v.
Douglas KLIPHOUSE, Appellee.
No. 4D99-1608.
District Court of Appeal of Florida, Fourth District.
September 27, 2000.
*17 Robert A. Butterworth, Attorney General, Tallahassee, and Robert R. Wheeler, Assistant Attorney General, West Palm Beach, for appellant.
Dan W. Moses, Boca Raton, for appellee.
TAYLOR, J.
The state appeals from an order suppressing the results of a blood alcohol test conducted on a blood sample taken from an unconscious motorist by medical personnel at the request of the police. We affirm.
*18 Appellee was driving a motorcycle when he was struck by a car and rendered unconscious. A police officer stated that when he arrived at the scene he smelled the odor of alcohol on appellee's breath. After appellee was transported to the hospital, the officer requested medical personnel to withdraw a blood sample to determine appellee's blood alcohol level. Appellee was still unconscious at the time. The results of the blood draw showed a blood alcohol content of .09 percent. Appellee was later charged by information with driving under the influence, in violation of Florida Statutes section 316.193(1) (1997).
Before trial, appellee filed a motion to suppress the blood alcohol results. He contended that the police lacked reasonable cause to have blood involuntarily withdrawn from him. At the hearing on the motion, the parties stipulated that appellee's driving was not a contributing cause of the accident and that the only indicia of appellee's impairment was the odor of alcohol on his breath. The trial court granted the motion to suppress the test results, determining that the mere odor of alcohol was insufficient for reasonable cause to believe that appellee was under the influence of alcohol. The state appealed the suppression order and the county court certified two questions of great public importance, which we rephrase as follows:
WHETHER FLORIDA STATUTE SECTION 316.1932(1)(c), WHICH AUTHORIZES A POLICE OFFICER TO ORDER BLOOD TESTING OF A PERSON WHO APPEARS FOR TREATMENT AT A HOSPITAL OR OTHER MEDICAL FACILITY AND IS UNCONSCIOUS AND INCAPABLE OF REFUSING SUCH TESTING, REQUIRES THAT THE OFFICER HAVE REASONABLE CAUSE TO BELIEVE THAT THE PERSON WAS DRIVING OR IN ACTUAL PHYSICAL CONTROL OF A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES (OR CHEMICAL OR CONTROLLED SUBSTANCES) TO THE EXTENT THAT HIS OR HER NORMAL FACULTIES WERE IMPAIRED.

DOES THE MERE ODOR OF ALCOHOL ON THE BREATH OF AN UNCONSCIOUS DRIVER, WHO WAS INVOLVED IN AN ACCIDENT NOT IN ANY WAY ATTRIBUTABLE TO SAID DRIVER, WITHOUT OTHER INDICIA OF IMPAIRMENT, GIVE AN OFFICER REASONABLE CAUSE TO BELIEVE THAT THE DRIVER WAS UNDER THE INFLUENCE OF ALCOHOL, WITHIN THE MEANING OF FLORIDA STATUTE SECTION 316.1932(1)(c)?
The legislature has narrowly defined the circumstances in which a blood draw may be performed in place of a breath or urine test without the driver's express consent. One circumstance allowing for forcible extraction of a blood sample is set forth in Florida Statutes section 316.1933(1) (1997). This section authorizes a blood test where an officer has probable cause to believe a driver under the influence of alcoholic beverages has caused death or serious injury to a human being, including himself. The situation presented in this case does not fall within section 316.1933(1), because, as the parties stipulated, the police officer did not reasonably believe that appellee caused the injuries resulting from the accident.
The other circumstance in which a police officer may obtain an involuntary blood sample is described in section 316.1932(1)(c). The requirements for this section are: (1) reasonable cause to believe the person was driving under the influence of alcoholic beverages or chemical or controlled substances;[1] (2) the person appears *19 for treatment at a hospital, clinic or medical facility, and (3) the administration of a breath or urine test is impractical or impossible or the person is incapable of refusal due to unconsciousness or other mental or physical condition.
The trial judge correctly determined that section 316.1932(1)(c) applies to the facts in this case. He suppressed the blood test results, however, because he determined that the requirement for "reasonable cause to believe that the defendant was under the influence of alcoholic beverages" was not met. In so ruling, the trial court followed the Fifth District Court of Appeal's definition of "under the influence" in State v. Brown, 725 So.2d 441 (Fla. 5th DCA 1999). In Brown, the district court stated that the phrase "under the influence of alcoholic beverages" is synonymous with being "impaired" by alcohol, and that being impaired meant something more than simply having consumed alcohol. Although the trial judge disagreed with this interpretation of "under the influence," he followed it and ruled that the blood sample was illegally obtained from appellee since the mere odor of alcohol on appellee's breath did not provide the officer with reasonable cause to believe that he was under the influence of alcohol. It simply showed that he had consumed alcohol to an unknown extent.
In Brown,the defendant's blood was tested under section 316.1933(1), because the officer believed that the defendant caused fatal injuries to a bicyclist while the defendant was driving under the influence of alcohol. Similar to section 316.1932(1)(c), this section requires the officer to have probable cause to believe that the driver was "under the influence of alcoholic beverages." The fifth district noted that:
The statute does not define what is meant by `under the influence of alcoholic beverages,' nor does it go on and say, as does section 316.193 to the extent that the person's `normal faculties are impaired.' We agree with the trial judge in this case that `under the influence' means something more than just having consumed an alcoholic beverage.
Id. at 443.
The court in Brown went on to discuss the meaning of "under the influence" as defined in Black's Law Dictionary:
`Under the influence' ... as used by statutes or ordinances, ... covers not only all well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive one of that clearness of intellect and control of himself which he would otherwise possess. Any condition where intoxicating liquor has so far affected the nervous system, brain or muscles of the driver so as to impair, to an appreciable degree, his ability to operate his automobile in the manner that an ordinary, prudent and cautious man, in full possession of his faculties, using reasonable care, would operate or drive under like conditions.
725 So.2d at 443, quoting Black's Law Dictionary 1369 (5th ed.1979) (emphasis supplied).
Although the district court reversed the trial court's suppression of the blood alcohol test results in Brown, it did so because of factors present in that case, other than the mere odor of alcohol, that indicated impairmenti.e., the defendant's blood shot eyes, erratic driving pattern, and behavior after the accident.
We first address the question whether the term "under the influence of alcohol" means "impaired" by alcohol under Florida Statute section 316.1932(1)(c). In deciding this issue, we apply the cardinal rule of statutory analysis that we must construe a statute to effectuate the intent of the legislature. See Parker v. State, *20 406 So.2d 1089, 1092 (Fla.1981); Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla.1963). To determine legislative intent, we must view the entire statute and give full effect to all statutory provisions, construing related provisions in harmony with one another. See Young v. Progressive Southeastern Ins. Co., 753 So.2d 80 (Fla.2000); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452 (Fla.1992); State v. Rodriquez, 365 So.2d 157, 159 (Fla.1978).
Section 316.193, Florida Statutes, prohibits a person from driving or being in physical control of a vehicle while under the influence of alcoholic beverages or chemical or controlled substances (DUI). A person is deemed to be under the influence of alcoholic beverages when (1) affected to the extent that the person's normal faculties are impaired or (2) when the person has a blood-alcohol level of 0.08 percent or higher.[2] The Implied Consent Laws (sections 316.1932 through 316.1934) provide procedures for gathering and testing physical evidence for DUI investigations and prosecutions. They require Florida drivers to submit to breath or blood testing to determine the alcohol concentration in their blood at the time of driving.
Although the compulsory administration of a blood test plainly constitutes a "search" of a person, it is well-established that forcible blood extraction from a defendant does not violate the Fourth Amendment prohibition against unreasonable searches and seizures when the defendant is under arrest for DUI provided (1) there is probable cause to arrest the defendant for DUI and (2) the blood is extracted in a reasonable manner by medical personnel pursuant to medically approved procedures. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Mitchell, 245 So.2d 618 (Fla.1971), receded from on other grounds by, Brackin v. Boles, 452 So.2d 540 (Fla.1984); State v. Slaney, 653 So.2d 422 (Fla. 3d DCA 1995).
In approving the police procedures utilized to obtain blood samples in Schmerber, the Supreme Court stressed the fact that the petitioner was under a lawful arrest and that the facts in that case clearly established probable cause for the officers to arrest the petitioner for driving an automobile while under the influence of alcohol. The Court stated:
The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.
Schmerber, 384 U.S. at 769-770, 86 S.Ct. 1826.
The Florida Supreme Court has held that the Fourth Amendment does not require an arrest prior to administering a blood test to an incapacitated or unconscious person treated at a medical facility. Mitchell, 245 So.2d at 623; Filmon v. State, 336 So.2d 586 (Fla.1976).[3] Yet, the court acknowledged the constitutional significance of probable cause for a DUI arrest as a prerequisite for blood testing. Mitchell noted the Supreme Court's conclusion in Schmerber that the involuntary blood withdrawal in that case was not an unreasonable search and seizure because *21 "there was plainly probable cause for the officer to believe that Schmerber was under the influence of intoxicating liquor." Id. at 621. The Mitchell court explained:
The question is not whether the driver has been formally placed under arrest at the time the blood sample was taken, but whether there was a `clear indication' of `relevance and likely success of a test of petitioner's blood for alcohol' ... The officers in the instant case had sufficient `clear indication' that a blood test was called for.
Id. at 622.
It follows, then, that forcible blood extraction under section 316.1932(1)(c) requires a "clear indication" or probable cause that a DUI crime has been committed. For as the Supreme Court stated in Schmerber," the facts which established probable cause to arrest ... also suggested the required relevance and likely success of [i.e., probable cause for] a test of... blood for alcohol." 384 U.S. at 770, 86 S.Ct. 1826.
In Brown, the fifth district reasoned that the probable cause necessary for a search (blood withdrawal) under section 316.1933(1) involves the same findings for probable cause for a DUI arrest. Probable cause for a DUI arrest under section 316.193 is based upon a belief that the driver is under the influence of alcoholic beverages to the extent that his normal faculties are impaired. For that reason, the fifth district interpreted the phrase "under the influence of alcoholic beverages" in section 316.1933(1) as equivalent to "impairment" and not the mere consumption of alcohol. Cf. Jackson v. State, 456 So.2d 916 (Fla. 1st DCA 1984).
In Jackson,the First District Court of Appeal reached a different conclusion. It acknowledged that probable cause for a DUI arrest is required under section 316.1933(1) but determined that the phrase "under the influence of alcoholic beverages" is not equivalent to the term "intoxicated" or "impaired." The court stated:
The purpose of the blood test taken under section 316.1933(1) is to aid in determining whether the driver causing a serious automobile accident, when reasonably believed to be under the influence of alcoholic beverages, had his normal faculties impaired by alcohol. The statutory provision contains sufficient requirements to establish probable cause to believe a criminal offense has been committed because, in addition to the required showing that the driver is `under the influence,' the statute also requires that the driver `has caused the death or serious bodily injury of a human being.'
Id. at 919.
Thus, the first district determined that evidence that a person has been drinking alcohol, coupled with evidence that the person has caused a serious or fatal accident, is enough to provide an officer with probable cause to believe that the person has committed a DUI offense. In other words, drinking alcohol plus causing an accident equal probability of impairment. Citing Jackson, we reached a similar conclusion in State v. Cesaretti, 632 So.2d 1105 (Fla. 4th DCA 1994). In Cesaretti we reversed the suppression of blood alcohol test results upon determining that the smell of alcohol on the driver's breath, along with evidence that the driver had caused serious bodily injury, gave the officer sufficient probable cause to request a blood test under section 316.1933(1).
We point out, however, that the blood sample in this case was ordered under a different statute. Unlike section 316.1933(1), the section applicable to the blood draw herein, section 316.1932(1)(c), does not require that the driver cause death or serious bodily injury to someone. It merely requires that the driver be "under the influence of alcoholic beverages," in need of medical treatment, and unable to take a breath or urine test. There is no "accident" factor that can provide a reliable indicator of impairmenti.e, dangerous or erratic driving. Without the additional *22 "causing serious injury" factor found in section 316.1933(1), this statute does not contain sufficient requirements for probable cause to believe a crime has been committed, unless driving "under the influence of alcoholic beverages" is interpreted to include the phrase "to the extent that normal faculties are impaired or blood or breath alcohol level is .08 or higher." Probable cause for a DUI arrest must be based upon more than a belief that a driver has consumed alcohol; it must arise from facts and circumstances that show a probability that a driver is impaired by alcohol or has an unlawful amount of alcohol in his system. Once established, probable cause can then provide the means for measuring degrees of impairment or blood alcohol concentration through breath or blood testing.
We conclude that section 316.1932(1)(c) requires a police officer to have "reasonably trustworthy information" sufficient to cause a person of reasonable caution to believe that the driver is under the influence of alcoholic beverages to the extent that the driver's normal faculties are impaired or the driver's blood or breath alcohol level is .08 or higher. Although section 316.1932(1)(c) contains no express language corresponding to the statutory elements of DUI, we find that such additional language is necessarily implicit in the reasonable cause requirement of this section in order for compulsory blood withdrawals to comport with Fourth Amendment principles.[4]
Furthermore, construing the two subsections, (a) and (c) of section 316.1932, in pari materia to ascertain legislative intent, we think it is clear that the legislature intended that reasonable or probable cause for a DUI arrest exist prior to administering compulsory blood tests under this statute. The statutory language evinces legislative intent that a subsection (c) blood test serve only as a substitute for a subsection (a) breath or urine test. Its use by law enforcement officers without express consent is permitted as a matter of convenience and only when the driver's physical or mental condition is such that the administration of a breath or urine test is impractical or impossible. Significantly, subsection (a) requires an actual arrest before an officer can request a breath or urine test. In not requiring an arrest for blood testing, which arguably involves a greater intrusion into personal privacy, the legislature foresaw "the difficulty and inutility of attempting to arrest an unconscious person or one in shock or on the operating table of a hospital." Mitchell, 245 So.2d at 622. However, we do not believe it intended to omit probable cause for a DUI arrest as a prerequisite to compulsory blood testing, and, thereby, set a lesser standard for police conduct than that required by the Fourth Amendment. We, therefore, answer the first certified question in the affirmative.
We next consider whether the mere odor of alcohol on the breath of the unconscious driver, who was determined not to have caused or contributed to the accident that led to serious injuries, furnished reasonable cause to believe that the driver was under the influence of alcohol to the extent that his normal faculties were impaired.
In suppressing the results of the blood test, the trial judge found that "the mere odor of alcohol only shows that alcohol was relatively recently imbibed by the defendant" and that the officer "could not possibly determine, from the facts of this case, that the defendant was impaired by alcohol, *23 no matter how strongly an alcoholic odor may exist on [his] breath." As the trial court observed, the presence of an odor of alcohol alone is generally not considered an accurate and reliable measure of impairment and, thus, is rarely deemed sufficient for a finding of probable cause.[5] Usually, the odor of alcohol must be combined with other factors. See Demers and Gayle, Florida DUI Handbook § 4.6(c) (1999). While the odor of alcohol on a driver's breath is considered a critical factor, other components central to developing probable cause may include the defendant's reckless or dangerous operation of a vehicle,[6] slurred speech, lack of balance or dexterity, flushed face, bloodshot eyes, admissions, and poor performance on field sobriety exercises.[7] As the fifth district explained in State v. Brown, 725 So.2d 441, 444 (Fla. 5th DCA 1999):
Whether a person has consumed sufficient alcohol to be deemed `under the influence' or impaired to an appreciable degree ... is a judgment call made by a police officer. It must be based on objective facts and circumstances observed by the officer at the time and place of the accident, and reliable information given to the officer by others ... Further, Florida courts require that the underlying facts, circumstances and information be sufficient to allow a person of reasonable caution to make the probable cause determination.
(Citations omitted).
In this case, witnesses at the scene of the accident reported that appellee had been operating his motorcycle in a safe and normal manner for several miles before the accident and that he did not cause the accident that led to his injuries. The driver of the other vehicle was cited for violating a traffic control device and colliding with appellee. Other than the odor of alcohol on appellee's breath, the police officer was unable to observe anything else *24 about appellee's conduct or appearance that would justify a reasonable inference that his normal faculties were impaired at the time of driving or that he had an unlawful blood alcohol level. Thus, there was no "clear indication" of the "relevance and likely success of a test of [appellee's] blood for alcohol."
We, therefore, agree with the trial court's ruling that the sole evidence of an odor of alcohol on appellee's breath was insufficient reasonable cause for the officer to believe that appellee was "under the influence" of alcoholic beverages and subject him to a blood draw under section 316.1932(1)(c), Florida Statutes. Accordingly, we answer the second certified question in the negative, but limit our holding to cases with the unique circumstances presented in this case, wherein the investigating officer possesses no information about the driver that indicates impairment by alcohol, other than the odor of alcohol on the driver's breath, and, where having completed an accident investigation, the officer can conclusively rule out the defendant as a sole or contributing cause of the accident.
For the reasons stated above, we affirm the order suppressing appellee's blood alcohol test results.
AFFIRMED.
FARMER, J., dissents with opinion.
KLEIN, J., concurs specially with opinion.
FARMER, J., dissenting.
As I see it, the issue in this case is whether defendant's permission for a blood test under the implied consent statute is effective and can be utilized by the state. If the consent is valid, the Fourth Amendment's probable cause requirement would be inapplicable. The validity of the consent would therefore depend on the requirements of the statute, not the Constitution. Ultimately the dispute comes down to whether the odor of alcohol on the driver's breath satisfies the statute's requirement for reasonable cause. I think it does.
The background may be briefly explained. The incident involves a motor vehicle collision with defendant's motorcycle in which he was injured. While defendant was not cited for causing the collision, the record is silent as to whether he should have been otherwise able to avoid the negligence of the other driver, who seems to have disregarded a traffic device. Defendant was unconscious at the scene, and he was thus transported to the hospital. Because the officer smelled the odor of alcohol on defendant's breath, however, he ordered the physician at the hospital to draw blood from him and report on the blood-alcohol level. The report showed a blood-alcohol level of .09.
The officer ordering the blood test acted under one of Florida's implied consent statutes. See §§ 316.1932 and 316.1933, Fla. Stat. (1999). Section 316.1932(1)(c) is the statute used in this case, and it requires three elements for a valid utilization of its consent to a blood test:
1. there is reasonable cause to believe the driver is under the influence of alcohol;
2. the driver appears at a hospital for treatment; and
3. it is impractical or impossible to administer a breath or urine test.[8]
Here there is no dispute as to the second and third elements; defendant was unconscious at the hospital, thus making a *25 breath or urine test impractical or impossible. That leaves only the first element, whether the facts show reasonable cause to believe the driver was under the influence of alcohol.
Defendant was charged with a violation of section 316.193(1).[9] The Information was framed in the general language of that statute, alleging that defendant:
"did drive or was in actual physical control of a vehicle, while under the influence of alcoholic beverages ... and was affected to the extent that [his] normal faculties were impaired; or while having a blood or breath alcohol level of .08 or higher, contrary to Florida Statute 316.193(1)." [e.s.]
As phrased, the charge was clearly in the alternative, charging both impairment and an unlawful blood-alcohol level. Under this charge, the state has the burden of proving either impairment under section 316.193(1)(a), or an unlawful blood-alcohol level under section 316.193(1)(b). See Dejerez v. State, 580 So.2d 656 (Fla. 4th DCA 1991) (driving under the influence and driving with an unlawful blood alcohol constitute alternative bases of the same statutory offense).
Section 316.193 is entitled "Driving under the influence; penalties." Because the entire statute addresses driving under the influence, section 316.193 encompasses more than the simple misdemeanor DUI violation contained in subsection (1). Subsection (3) punishes more serious felony violations involving death or serious bodily injury.[10] It is therefore apparent that the title of section 316.193 has been used in a comprehensive sense, thereby indicating that the subject of the entire statute is the criminalization and punishment for consuming alcohol and then driving.
It is true that in subsection (1)(a), the legislature has also used the term "under the influence," this time, however, only in a specific, restricted sense to define a single alternative form of the crime. The three methods of showing a driving under the influence violation under section 316.193(1) are joined with the disjunctive or and are genuine alternatives. Of the three alternatives for showing a violation under subsection (1) of section 316.193, only the text of subsection (1)(a) requires a showing that alcohol has demonstrably affected the "normal faculties," i.e., a showing of actual "impairment." The alternative crimes in subsections (1)(b) and (1)(c) lack any textual requirement of visible impairment, depending solely on chemical analyses of blood or breath to show a specific concentration or level of alcohol in the driver's circulatory or respiratory systems.
Subsections (1)(b) and (c) punish the mere presence of a certain concentration of alcohol in the bodily chemistry of drivers without regard to whether the driver's "normal faculties" have been visibly impaired. See State v. Rolle, 560 So.2d 1154, 1156 (Fla.1990) ("section 316.193 allows proof of a blood-alcohol level ... to be *26 substituted for proof of impairmentnot as an unconstitutional presumption, but as an alternate element of the offense.").[11] Therefore based on the alternative charge in this Information, the state was entitled to prove the section 316.193(1) DUI charge by showing only an unlawful blood-alcohol level under subsection (1)(b), without any evidence of impairment.
I think the legislature could logically entitle all three alternatives in section 316.193(1) as constituting the single offense of driving under the influence even though only one of the three alternatives requires proof that the driver's normal faculties were demonstrably impaired. The legislature might have concluded that almost any amount of alcohol has the capability of impairing the faculties of some drivers. Thus I think the legislature's purpose was to suppose a pernicious influence on drivers from even small amounts of alcohol. In subsection (1)(a) it sought to punish any amount of alcohol consumption before driving so long as it demonstrably impairs the driver's normal faculties. Hence under subsection (1)(a), it is irrelevant whether the driver's blood alcohol level is far below .08, as long as the driver was demonstrably impaired.
In subsections (1)(b) and (c), however, it has punished an unlawful blood-alcohol level of .08 or higher without regard to whether this amount of alcohol has visibly impaired the driver's abilities. A blood-alcohol concentration of .08 or higher reflects a conclusion that all drivers are impaired at that level, regardless of whether they manifest signs of impairment, and that some drivers are adept at masking visible signs of alcohol influence. That is, after all, the basis for criminalizing the mere presence of alcohol in the blood at a specified level, as well as the basis for the consent for blood tests. Properly understood, the legislature's use of the term "under the influence in section 316.1932(1)(c) does not disclose any purpose to require a showing of impairment in all prosecutions under section 316.193(1). It merely reflects the legislature's belief that almost any alcohol can influence some drivers in a most dangerous way.
I also think that the legislature is well aware of the meaning of the legal term of art in criminal jurisprudence embodied by probable cause. When it drafts a statute to aid the state in acquiring evidence to prove a criminal violation, the drafters surely appreciate the consequences of usingor not usingthe term probable cause. Thus when it uses instead reasonable cause, I take the meaning to be different than full-fledged probable causean intentional lessening of the burden of showing the statutory trigger to the consent to the blood test.[12]
I think the drafters of the statute fully intended to adopt a reasonable cause standard in section 316.1932(1)(c)not a standard of probable causefor believing that a driver may be under the influence of alcohol. Simple DUI punishes, as we have just seen, the mere presence of alcohol in drivers, sometimes in any quantity, sometimes in specific quantities. The concentration or level of alcohol merely affects *27 how the state decides to attempt to prove the DUI charge. If the state elects to proceed under subsection (1)(a), it will have to prove impairment; but if the state elects to proceed under subsections (1)(b) and (c), it will not have to prove impairment. In short proof of the crime may not involve any showing of impairment. The addition of a showing of impairment simply to get the blood test adds a requirement that the crime itself may not involve.
This difference between probable and reasonable cause is not just a semantical distinction. It is, rather, nothing less than the chasm between the world of probabilities on the one hand, something that is more likely than not, and the world of mere possibilities. Reasonable cause involves a basis to believe that something is merely possible, that it may be true, that it is not merely fanciful or wishful but conceivable and could well be real.[13] The realm of the possible distinguishes the contradictory realm of the impossible, of something that is incapable of being real, and comprehends what scientists and statisticians refer to as an association or a correlation.[14]
Probable cause, as its very words indicate, is something more than a mere possibility. It means that more likely than not something is true. Surely, the odor of alcohol on the breath reasonably indicates that a driver has consumed alcohol. For that matter it may also show more likely than not that the level is at or above .08, the levels specified in subsections (1)(b) and (c). A definite odor of alcohol realistically indicates that one has consumed alcohol before driving, and thus that one may very well be under the influence of alcohol and consequently impaired.
The proposition that the legislature was aware of the distinction between probable and reasonable is evident from a comparison of the two implied consent statutes viz., section 316.1932(1)(c) and section 316.1933(1). Section 316.1933(1) is the statute involved in State v. Brown, 725 So.2d 441 (Fla. 5th DCA 1999), prominently relied upon by the majority. Section 316.1933(1) is restricted to cases of death or serious injury and provides that an officer may require the driver to submit to a blood test if the officer has probable cause to believe that the driver was under the influence of alcoholic beverages.
Section 316.1932(1)(c), the implied consent applicable in this case, does not use the term probable cause. For these crimes not involving death or injury punishable under section 316.193(1), the implied consent turns on reasonable cause. Because of the public safety and the dangers caused by drivers impaired by alcohol, as well as the relatively minor inconvenience caused by blood tests on drivers already being treated at a hospital, I believe that the legislature could make the implementation of a consent from even a driver ultimately shown to be innocent turn on this qualitatively less stringent showing than probable cause.
We must not forget that section 316.193(1) creates a "strict liability" crime. See Baker v. State, 377 So.2d 17, 19 (Fla. 1979) (though not favored, statutes imposing strict criminal liability are valid; legislature intended simple DUI statute without death or serious bodily injury to have strict liability consequences); and cf. Magaw v. State, 537 So.2d 564, 567 (Fla.1989) (prior to 1986 amendment, even felony DUI statute involving death or serious bodily injury was strict liability crime). *28 Essentially, section 316.193(1) punishes the act of driving when drinking, without regard to the state of mind of the driver or whether the driving has resulted in any traffic accident or injury. Section 316.193(1) does not require any showing of criminal intent or causal relationship. Moreover, as we have seen, subsections (1)(b) and (c) do not even require any showing of visible signs of impairment. Thus it is apparent that subsections (1)(b) and (c) have an additional strict liability consequence not shared by subsection (1)(a).[15] Because section 316.193(1) punishes the mere act of driving after consuming alcohol even when impairment is not shown, nothing in section 316.1932(1)(c) requires anything beyond the mere presence of some alcohol having been consumed to trigger reasonable cause.
Section 316.1932(1)(c) was deliberately drafted as a consent to the test, not as brute authority for the state to take the blood. This statute provides that a driver consents to the blood test by his own voluntary conduct of driving in this state. And so the driver has no basis for supposing that his consent to take blood would be effective only if the officer has probable cause to believe that he has committed a simple DUI. A driver has tacitly agreed to the lesser showing of reasonable cause.[16] To read a probable cause requirement into it is to entirely destroy the very concept of driver consent.
Defendant makes no attempt to argue that the odor of alcohol emanating from one's breath is not reasonably calculated to show that a person has consumed alcohol. Nor does he suggest that the mere consumption of alcohol discernible on the breath is not a reasonable scientific foundation to indicate that one may well be impaired in one's driving ability. In fact he does not even dispute the proposition that just a small amount of alcohol in the system might affect the driving ability of some people. Lacking such challenges, section 316.1932(1)(c) surely cannot be said to be arbitrary. Plainly it rests on a rational foundation and is calculated to effectuate a purpose of making more definite the guiltor innocence!of one charged with driving under the influence.[17]
The argument for a probable cause requirement to effectuate the driver's consent to the blood test overlooks the well-established rule that voluntary consent takes a search out of the Fourth Amendment. See Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (Fourth Amendment prohibition against unreasonable searches not applicable where voluntary consent has been obtained); and United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (same). If the consent provision is effective to its purpose, there should be no Fourth Amendment issue and thus no basis to require probable cause that the DUI crime has been committed before the blood test is permissible.
My colleagues do not explain why it would be necessary for the legislature to enact an implied consent statute to authorize a blood test under circumstances where the police already have fully developed probable cause to arrest the driver for a DUI violation. For, surely, if the police already have probable cause that the crime of DUI has actually been committed, *29 under the Fourth Amendment they would no longer need the consent of the accused to perform the blood test. If the state already has probable cause of the commission of the crime, then the accused could lawfully be arrested and have blood drawn at the jail whether he has consented or not. That is after all among the clear holdings of Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).[18]Schmerber held that the withdrawal of blood by a physician from a defendant who had refused to consent to it did not violate the Fourth Amendment proscription against unreasonable searches. 384 U.S. at 768, 86 S.Ct. 1826. Therefore Schmerber is inapposite because here the police already have defendant's consent to the blood test.
Again, we know from Illinois v. Rodriguez and United States v. Matlock that consent takes a search out of the Fourth Amendment. So why, one wonders, would the legislature spend its time writing an implied consent statute for a circumstance where the state already has the constitutional authority to test the blood of the accused driver?[19] Neither of the two majority opinions addresses this question.
State v. Mitchell, 245 So.2d 618 (Fla. 1971), also supports my analysis. The essential issue in Mitchell was whether the predecessor statute to section 316.1932 required the defendant to be under arrest before blood could be taken under the consent provision. Requiring an arrest to draw the blood would have been tantamount to requiring probable cause to believe that he had driven under the influence. But the court rejected the arrest requirement, using instead the notion of "clear indication" to trigger the state's authority to draw the blood under the consent provision. In context, that is hardly synonymous with reading the statute to require probable cause to draw blood. As I said at the beginning, this is not a Fourth Amendment case.
I do not think today's holding is valid under any theory of statutory intent.[20] I *30 do not agree that the rules of statutory construction require a search for something as illusory and unknowable as what a majority of 160 legislators each really intended. Instead I believe that we must try to understand the meaning of statutory text. But even if the ultimate goal were to find a single "legislative intent," I would still be unable to conclude that the legislature intended for judges to add language to a statute under the process of statutory construction and thereby change its essential meaning. I cannot imagine that the legislature actually intended that judges should effectively collapse two explicit alternatives for proving a defined crime into only one. This is especially true with regard to a subject that so directly and pervasively affects public health and safety as the prevention and punishment of operating motor vehicles while under the influence of alcohol.[21]
The addition of probable cause to arrest would mean that all blood authorizations under section 316.1932(1)(c) will necessarily require this extra showing of impairment. I believe this is contrary to the legislature's chosen method to implement the driver's implied consent to the blood testreasonable cause to believe that the driver may simply have driven after consuming alcohol. It amounts to a significant weakening of the domain of the DUI and implied consent statutes' structure and purpose. The strict liability nature of the crime created under section 316.193(1) will be severely compromised by this judicial weakening of the implied consent statute, substantially weakening the heart of the DUI statutory scheme, contrary to its obvious purpose.
I would reverse.
KLEIN, J., concurring specially.
I agree with the majority opinion and am writing only to respond to Judge Farmer's dissent, which rests on the assumption that when the legislature used the words "reasonable cause" in the statute, it intended a standard which is easier to meet than probable cause. My research indicates there is no difference.
In Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the Supreme Court used the term probable cause, and defined it as existing when "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Some years later, the court, in referring to the same standard, used reasonable cause:
The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific `things' to be searched for and seized are located on the property to which entry is sought. [emphasis supplied].
Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).
Black's Law Dictionary provides the following:
Reasonable and probable cause. Such grounds as justify any one in suspecting another of a crime, and placing him in custody thereon. It is a suspicion founded upon circumstances sufficiently strong to warrant reasonable man in belief that charge is true. Henry v. U.S., 361 U.S. 98, 80 S.Ct. 168, 4 *31 L.Ed.2d 134; Com. v. Stewart, 358 Mass. 747, 267 N.E.2d 213. See also Probable cause.
* * *
Reasonable cause. As a basis for arrest without warrant, is such state of facts as would lead man of ordinary care and prudence to believe and conscientiously entertain honest and strong suspicion that person sought to be arrested is guilty of crime. People v. Newell, 272 Cal.App.2d 638, 77 Cal.Rptr. 771, 773. See also Probable cause; Reasonable and probable cause; Reasonable belief.
* * *
Probable cause. Reasonable cause; having more evidence for than against. A reasonable ground for belief in the existence of facts warranting the proceedings complained of. An apparent state of facts found to exist upon reasonable inquiry (that is, such inquiry as the given case renders convenient and proper), which would induce a reasonably intelligent and prudent man to believe, in a criminal case, that the accused person had committed the crime charged, Cook v. Singer Sewing Mach. Co., 138 Cal.App. 418, 32 P.2d 430, 431. See also Information and belief; Reasonable and probable cause; Reasonable belief; Reasonable grounds.
This court has also used the words probable and reasonable interchangeably:
[A]utomobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize."... The basis of such a warrantless search is reasonable cause for the officer's belief that the automobile contains contraband. [emphasis supplied].
Caplan v. State, 515 So.2d 1362, 1366 (Fla. 4th DCA 1987).
If reasonable cause as is used in the statute is the same as probable cause, the consent provision of the statute which Judge Farmer relies on is irrelevant. Blood could not be drawn with less reason than is allowed by the Fourth Amendment as interpreted by Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
The timing of this legislation suggests that it is connected to Schmerber. Schmerber was decided in 1966, and the statute involved in this case was adopted in 1967. Ch. 67-308, § 1, Laws of Fla. When the statute was adopted, section 316.1932(1)(c)[22], at issue in this case, did not contain the requirement of reasonable cause although there was a reasonable cause requirement in section 316.1932(1)(a)[23]. In State v. Hilton, 498 So.2d 698 (Fla. 5th DCA 1986), the defendant challenged subsection 1(c) as violating the Fourth Amendment's protection against unreasonable search. In order to uphold the constitutionality of subsection 1(c), the fifth district held that there was a reasonable cause requirement in subsection 1(c) "implied from reading section 316.1932(1)(c) together with section 316.1932(1)(a)." Id. at 700. The Hilton court obviously concluded that the consent provision in the statute cannot trump the Fourth Amendment.
After Hilton the legislature added the reasonable cause requirement to subsection (1)(c). Ch. 96-330, § 4, Laws of Fla. I thus conclude that the legislature originally enacted this legislation with Schmerber in mind and recognized that it could not impose forced blood extraction without complying with the Fourth Amendment. In fact our supreme court has construed this statute as extending greater protection against unreasonable searches and seizures than the federal constitution provides. *32 Sambrine v. State, 386 So.2d 546 (Fla.1980). See also, State v. Slaney, 653 So.2d 422 (Fla. 3d DCA 1995)(same); State v. McInnis, 581 So.2d 1370 (Fla. 5th DCA 1991)(same).
Judge Taylor and I share Judge Farmer's concerns about the problem of drunk driving. The fact remains, however, that the Fourth Amendment requires probable cause for a search and seizure and there was no probable cause in this case.
NOTES
[1] In 1996, the legislature amended subsection (c) of Florida Statutes section 316.1932(1) and inserted the requirement for "reasonable cause to believe the person was driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages..."
[2] DUI may be established in two ways: by proof of impaired normal faculties or proof of unlawful blood or breath alcohol level. See Dejerez v. State, 580 So.2d 656 (Fla. 4th DCA 1991); see also State v. Rolle, 560 So.2d 1154 (Fla.1990).
[3] The blood sample obtained in Mitchell was authorized under Florida Statutes section 322.261(1)(b) (1989), a predecessor to section 316.1932(1)(c). See also Kenson v. State, 577 So.2d 694 (Fla. 3d DCA 1991)(under section 316.1932 an arrest is not a prerequisite for a blood test request).
[4] States are privileged under their state law to adopt higher, but not lower, standards for police conduct than those required by the Fourth Amendment. State v. Slaney, 653 So.2d 422, 425 (Fla. 3d DCA 1995), citing Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). However, 1982 amendments to Article I, section 12, Florida Constitution, require Florida's search and seizure laws to conform with all decisions of the United States Supreme Court rendered both before and subsequent to the adoption of the amendment. Bernie v. State, 524 So.2d 988 (Fla.1988).
[5] See State v. Kolb, 7 Fla. L. Weekly Supp. 548 (Fla. 12th Jud. Cir.2000)("It is uncontradicted that odor alone is evidence of nothing more than the subject had, at some point, ingested a beverage that may have contained alcohol. Even a trained law enforcement officer cannot determine how much a person has had to drink, or when, simply from the odor of alcohol. Certainly, the odor, without more, is no indication of impairment."); State v. Longacre, 2 Fla. L. Weekly Supp. 571 (Fla. 11th Jud. Cir.1994)(odor of alcohol, without evidence of impairment, not sufficient to establish probable cause necessary to require driver to submit to field sobriety test); Davis v. State, 40 Fla. Supp.2d 35, 36 (Fla. 15th Jud. Cir.1989); State v. Marshall, 36 Fla. Supp.2d 34, 35 (Fla. 4th Jud. Cir.1989)(mere odor of alcohol, absent other sufficient indicia of impairment, does not provide requisite probable cause for field sobriety tests); Chait v. State, 27 Fla. Supp.2d 115 (Fla. 11th Cir.1988)(traffic accident and odor of alcohol, without more, did not constitute probable cause for DUI arrest); People v. Roybal, 655 P.2d 410, 413 (Colo.1982)(odor of alcoholic beverages is not inconsistent with ability to operate a motor vehicle in compliance with the law).
[6] State v. Cesaretti, 632 So.2d 1105 (Fla. 4th DCA 1994)(officer had cause to request blood test of motorist who had odor of alcohol on her breath and caused serious bodily injury); State v. Silver, 498 So.2d 580 (Fla. 4th DCA 1986)(officer authorized to order blood sample from defendant who had odor of alcohol on breath and was driver of vehicle involved in traffic fatality); Williams v. State, 731 So.2d 48 (Fla. 2d DCA 1999)(smell of alcohol on defendant's breath, coupled with traffic fatality and statement that defendant was driver, gave officer probable cause to draw defendant's blood); State v. Brown, 725 So.2d 441 (Fla. 5th DCA 1999) (police had probable cause to order blood test of driver who had collided with bicyclist and officer observed that driver had odor of alcohol on breath and blood-shot eyes); Keeton v. State, 525 So.2d 912 (Fla. 2d DCA 1988)(probable cause to administer blood test existed where officers smelled strong odor of alcoholic beverages on defendant's breath and defendant operated vehicle which caused at least one death); Jackson v. State, 456 So.2d 916 (Fla. 1st DCA 1984)(state met burden of proving probable cause where trooper smelled alcohol on defendant's breath and knew defendant was driver of motor vehicle which caused a death).
[7] See Mendez v. State, 678 So.2d 388 (Fla. 4th DCA 1996)(upon completion of field sobriety tests, officer developed probable cause to arrest defendant for DUI and search his vehicle incident to a lawful arrest).
[8] See § 316.1932(1)(c), Fla. Stat. (1999):

"Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by operating such vehicle, deemed to have given his or her consent to submit to an approved blood test for the purpose of determining the alcoholic content of the blood ... if there is reasonable cause to believe the person was driving... while under the influence of alcoholic beverages ... and the person appears for treatment at a hospital ... and the administration of a breath or urine test is impractical or impossible." [e.s.]
[9] See § 316.193(1), Fla. Stat. (1999):

"Driving under the influence; penalties
"(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and:
(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired;
(b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or
(c) The person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath."
[10] I have not overlooked the fact that even simple DUI under section 316.193(1) can become a felony for a fourth or subsequent conviction. See § 316.193(2)(b), Fla. Stat. (1999). Even still, without death or serious injury I think that the blood test consent statute in section 316.1932(1) would very likely still apply to the officer's investigation leading to a fourth successive charge and conviction. The officer in the field investigating a traffic incident may not yet have ascertained whether the suspect has prior convictions.
[11] Previously this DUI crime could have been proven only by showing impairment. And so the legislature created the unlawful blood and breath alcohol provisions in subsections (1)(b) and (c) as alternative methods of proving a single statutory offense of driving under the influence. Rolle, 560 So.2d at 1154-1155.
[12] Judge Klein overlooks the idea that a legislature is not tied to Black's law dictionary in devising an implied consent statute for blood tests. So too with appellate court opinions using reasonable merely as a descriptive synonym for probable cause in those instances where the Constitution requires such a showing. Drawing blood from drivers who show signs of alcohol consumption is not the same thing as charging such drivers with the crime of DUI. The Constitution may require probable cause for the crime, but there is nothing within it suggesting that probable cause is required merely to implement an implied consent to a blood test. Judge Klein suggests no authority for the proposition that the legislature is precluded from making implied consent for blood tests turn on a lesser showing than probable cause.
[13] The OED's most apt definition is: "4. agreeable to reason; not irrational, absurd or ridiculous." OXFORD ENGLISH DICT. (Compacted.) 1521.
[14] A strong association or correlation can lead a scientist to infer causation even when the scientist cannot explain the precise mechanism of the effectas in the association between smoking and lung cancer. I believe the legislature may have been impressed by some studies showing a strong association or correlation between the consumption of even small amounts of alcohol and a lessening of motor functions and reaction abilities in humans.
[15] See also § 316.1934(2)(c) ("[A] person who has a blood-alcohol level or breath-alcohol level of 0.08 or higher is guilty of driving, or being in actual physical control of, a motor vehicle, with an unlawful blood-alcohol level or breath-alcohol level.").
[16] Obviously, if a driver wishes to avoid giving consent to the drawing of his blood under the lesser showing of reasonable cause, he need only refrain from operating a vehicle after he has consumed alcohol. This may be, if I may suggest, one of the most important purposes of the implied consent statute.
[17] Indeed by tying the implied consent statute to a simple DUI statute with alternative crimes that do not depend on the subjective impressions of eyewitnesses as to whether the driver was under the influence, the legislature has made the statute both fairer and more effective in punishing the real offenders.
[18] While I am under the influence of Schmerber, I note that the majority opinion did not mention Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), which was relied on in Mitchell. Breithaupt concerned the taking of blood from an unconscious driver. The Court held that taking blood from the unconscious driver, who unlike our driver had not consented, did not deny due process of law, and pointedly explained:

"The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. The States, through safety measures, modern scientific methods, and strict enforcement of traffic laws, are using all reasonable means to make automobile driving less dangerous.
"As ... even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road.... Furthermore ... the individual's right to immunity from such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions."
352 U.S. at 439.
[19] Neither of the two other opinions by members of the panel addresses this conundrum. No one in this case has advanced any reason why the legislature would bother with a consent for a blood test if the police already have probable cause for the crime.
[20] As it happens, I think the majority opinion's resort to statutory construction is erroneous. When the language of a statute is clear and unambiguous and conveys a definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. McLaughlin v. State, 721 So.2d 1170 (Fla.1998). One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless the words are defined differently in the statute or another meaning has been made apparent by the legislature. Green v. State, 604 So.2d 471 (Fla.1992). Legislative intent is determined primarily from the language of the statute. St. Petersburg Bank & Trust v. Hamm, 414 So.2d 1071 (Fla.1982). The courts of this state lack the power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications; to do so is an abrogation of legislative power. Holly v. Auld, 450 So.2d 217 (Fla.1984). Courts will not ascribe to the Legislature an intent to create absurd or harsh consequences, and so an interpretation avoiding absurdity is always preferred. City of St. Petersburg v. Siebold, 48 So.2d 291 (Fla.1950). No one suggests that section 316.1932(1)(c) is ambiguous.
[21] "Drunken drivers ... claimed 2,920 lives last year in Florida." PALM BEACH POST, August 6, 2000, 10D.
[22] Then numbered section 322.261(1)(c).
[23] Then numbered section 322.261(1)(a).